## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| ESTATE OF JEFFREY L. PETERS AND JARYD PETERS, INDIVIDUALLY AND AS REPRESENTATIVE OF ESTATE OF JEFFREY L. PETERS **Plaintiffs**, | § § § § § § § § | |
| v. | § § | CIVIL ACTION NO._____ **JURY DEMANDED** |
| GALVESTON COUNTY, SHERIFF HENRY TROCHESSET, *in his individual capacity*, BOON-CHAPMAN BENEFIT ADMINISTRATORS INC., SOLUTA, INC, SOLUTA HEALTH, INC, KATHY WHITE, AKA, KATHY JEAN JORDAN, i*n her individual capacity,* CHIEF MEDICAL EXAMINER, ERIN BARHART in her *individual capacity* and JOHN DOE Unknown officer(s) and  JOHN DOE Unknown Jailer(s), acting in their *individual capacities* **Defendants**, | § § § § § § § § § § § § § § § § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE.:

This is an action brought by Plaintiffs, Estate of Jeffrey Lynn Peters, Jaryd  Lyle

Peters, individually and as Representative of the  Estate of Jeffrey Lynn Peters as Wrongful

Death Beneficiary, as heirs of Jeffrey L. Peters, Plaintiffs herein, complaining of Galveston

1

County and Galveston County Sheriff, Henry Trochesset, ("County Defendants" Collectively herein) Boon-Chapman Benefit Administrators Inc.("Boon Chapman" herein), Soluta, Inc, Soluta Health, Inc ("Soluta" herein), Kathy White, Aka, Kathy Jean Jordan ("Kathy White" herein) and Chief Medical Examiner of Galveston County Erin Barnhart acting under in their individual capacities and for the cause of action would respectfully show as follows:

Plaintiffs come before this Honorable Court pursuant to 42 U.S.C § 1983 and Texas Wrongful Death Tex. CPRC 71.002-71.021 and survivorship statute complaining through plausible, detailed, and specific facts that defendants acted under color of law and unreasonably deprived Jeffrey Petters, deceased,  of his clearly established rights secured by the United States Constitution, Fourth and Fourteenth Amendments, to remain free from unreasonable seizure and injury against Defendants.

## I. JURISDICTION AND VENUE

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution and supplemental jurisdiction for all state law claims.  The jurisdiction of this court is invoked to secure protection of and to redress deprivation of rights secured by the U.S. Constitution under the Fifth Amendment, Eighth Amendment, Fourth and Fourteenth Amendment of the U.S. Constitution, as made applicable to the states through the 14th Amendment, and by the 42 U.S.C Section 1983 , Section 1985, and Section 988 ensuring due

2

process, and providing for the equal protection and rights of all persons in every state  and

territory within the jurisdiction of the United States. Supplemental Jurisdiction over the state

law claims is conferred by 28 U.S.C. § 1367.

Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and

all incident events and occurrences giving rise to this action occurred in this district.

## II. **NATURE OF THE CASE**

This case arises out of the October 17, 2019 treatment of Mr. Jeffrey Lynn Peters, a

middle-aged former owner of a computer furniture business. He was stranded on the side of

the road with a defective battery in his truck. Mr. Peters died in Galveston County jail's

custody on or about October 21, 2019. His medical records indicate the cause of  Mr. Peters'

death was Acute Respiratory Distress, Cardiac Arrest, Pulmonary Embolism, and Myocardial

Infarction.    Mr. Peters suffered blunt force trauma as he was taken into jail custody and

booked in the Galveston County Jail. Bleeding profusely, and suffered rib fractures, and no

Emergency Medical Services was called or provided to Mr. Peters. Inexplicably, he was taken

by the officers into jail custody and not taken to a hospital.  The booking photographs show

the trauma to his head:

3



After almost two years of numerous requests, the assigned Galveston County Medical Examiner, Erin Barnhart, has never released the unredacted autopsy report of Jeffrey Lynn Peters to the grieving family of Jeffrey Lynn Peters. An autopsy report that identifies the manner and cause of death of Mr. Peters. His sons require counseling, mental and emotional treatment to cope with the death, and not knowing the official cause and manner of their father's death from the medical examiner. The purported reasons given for the almost two-year refusal to release the unredacted autopsy report are: the records are not available, the matter is the subject of a criminal investigation by the Galveston County District Attorney's office, and that the appointed Galveston County Medical Examiner, Erin Barnhart did not perform the autopsy report. No criminal charges have ever been filed or charged against the Sheriff, Sargent, unknown arresting officers, or unknown jailers.

### III. BACKGROUND FACTS COMMON TO ALL CLAIMS FOR RELIEF

1. Mr. Jeffrey Lynn Peters was an engineer who owned a computer furniture manufacturing business he built from the ground up.

2.      The *Houston Business Journal* recognized his business as one of the fastest up and coming companies in the computer furniture manufacturing industry.

3.      Mr. Peters' life changed dramatically, and he sold the technology business.

4.      On or about October 12, 2019. Mr. Jeffrey Lynn Peters was driving on 27th Street in San Leon, Texas, in his Ford F-150; as he was driving, the truck battery died.

5.      Stranded on the side of the road Mr. Peters called a friend to give him a jump start of his truck, with his malfunctioning truck,

6.      Speaking coherently to his friend Peters advised him of the need for a jump start.

7.      The friend indicated the battery continues to die.

8.      The vehicle must have other mechanical reasons for it to continue to malfunction, and he suggested that Peters get the major problem addressed, and he advised that he would not give him a jump start.

9.      Later, unknown Officers arrived at the scene. Mr. Peters poses no immediate threat of harm to the officers. However, Mr. Peters suffered blunt force trauma to his head. The fifty-nine-year-old Mr. Peters was in the Galveston County Jail's custody sitting in the Sheriff's office waiting to see a Magistrate and to be processed in the jail.

10.     Peters was picked up on October 12, 2019, during a plausible wellness check for a warrant for his arrest due to failure to appear in court for an alleged false report to peace officer charge.

11.     Peters as a pre-trial detainee had clearly established rights under the Eight, Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive force and illegal arrest.

12.     While in the booking department at the Galveston County Jail, an unknown officer said that a scuffle took place, resulting in an assault to public servant charge.IDefendants failed to provide Mr. Peters medical aid after the scuffle and before the EMS arrived. Jailors holding facilities failed to provide Peters appropriate healthcare, acted with deliberate indifference to his medical needs, or acted in an objectively unreasonable manner regarding Mr. Peters's healthcare needs.

13.     Mr. Peters was then placed into a detoxification program and in a punitive jail cell.

14.     While in detoxification, Mr. Peters complained about having trouble breathing.

15.     Shortly later, he was found unresponsive in his jail cell.

16.     As per University Texas Medical Branch ("UTMB"), Mr. Peters suffered from cardiac arrest and was revived and sent to UTMB hospital on October 17, 2019.

17.     During transport, Mr. Peters' heart stopped again and was brought back a second time.

18.     While in intensive care at UTMB, Mr. Peters died on October 21, 2019.

19.     When picking up Mr. Peter's belongings, the Inmate Property Record showed Mr. Peters did not have a black eye shown in his mugshot when he was falsely charged with assault on a public servant.

20.     According to data collected from the Texas Attorney General's office by the nonprofit Texas Justice Initiatives, Mr. Jeffrey Lynn Peters' death is at least the seventh in-custody death reported by the Galveston County Sheriff's office since 2015.

21.     An autopsy has been completed, but as of the filing of this suit, September 21, 2021, the October 21, 2019 unredacted autopsy report indicating the official cause of Peter's death has remained unavailable to Mr. Jeffrey Peters' grieving family after numerous requests. Deaths that occurred in Texas and Nationwide, after October 2019, unredacted autopsy reports have been provided and made available to other families. Texas requires autopsy reports to be made available to the family.

22.     Many citizens' deaths have occurred while under the care of the medical staff at Galveston County jail.

23.     Many deaths have occurred while under the care of Sheriff Trochesset and Kathy White.

24.     Sheriff Trochesset delegated his duty to provide adequate medical care to Kathy White BoonChapman Soluta Health. Therefore, sheriff Trochesset, Kathy White, and Boon Chapman/ Soluta Health were responsible for Mr. Jeffrey Peter's medical care and death.

25.     Galveston County Sheriff delegated his duty to provide adequate medical care to the inmates or pretrial detainees under his care at the Galveston  County Jail to Boon Chapman/Soluta. However, it had a known history of deliberate indifference to inmates' serious medical needs since at least June 2013.

26.     Sheriff   Trochesset, his employees, and his agents failed to train and failed to adequately supervise the actions and omissions of the jail staff, officers, contractors, employees, and agents of the Galveston County Jail, as a result, inmates at the jail suffered constitutional violations in the delay and denial of medical care.

27.     Based on the specific facts pled above, this is a wrongful death action brought by the Estate of Jeffrey Peters and Plaintiffs, who are the son, and heirs of Mr. Jeffrey Lynn Peters, pursuant to Tex. C.P.R.C § 71.002-71.021, 42 U.S. C. §1983, and § 1985, they are seeking recovery and redress for violations of the constitutionally-protected civil rights of Mr. Peters, decedent.

28.     Specifically, Plaintiffs, Jaryd Peters, as representative of the Estate of Mr. Jeffrey Lynn Peters, allege that Galveston County and Galveston County Sheriff, Henry Trochesset, Boon-Chapman Benefit Administrators Inc., a Travis County Defendant, Soluta, Inc., Soluta Health, Inc., Kathy White, Aka, Kathy Jean Jordan and Chief Medical Examiner, Erin Barnhart and the unknown John Doe arresting officer(s) and unknown jailer(s) violated Mr. Jeffrey Peters' Civil rights pursuant to the Fourteenth Amendment, Fourth Amendment and Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment, to receive proper medical care, and to receive adequate medical care, equal protection, and due process, while incarcerated and under the care, custody and control of Galveston County, at the Galveston County Jail under the supervision and control of

Galveston County, the Galveston County Sheriff, Galveston County John Doe Jailers and Galveston County Jail's Contracted Medical Providers.

29.     Plaintiffs bring this action seeking justice-and accountability for the wrongful, unjustified killing of Mr. Petters, and seeks to deter the practice of wrongful, unjustified beating of others at the hand of unknown officers and jailers and for fair compensation and, in the hope, that they can prevent other inmates at any Texas Jail, but namely the Galveston County Jail from suffering such preventable injuries and death.

### IV. PARTIES AND SERVICE

30.     **Plaintiff, Jaryd Peters**, as representative of the Estate of Mr. Jeffrey Peters, brings this suit individually and for the benefit of his next of kin and heirs of the Estate of Jeffrey Peters.

31.     Mr. Peters and his son Jaryd were residents of Galveston County, Texas, and Harris County, Texas, respectively. Mr. Peters was a resident of Galveston County, Texas, on October 21, 2019, when he died in Galveston County. The Estate of Jaryd Peters and its representative brings this action as a representative of the estate of the decedent. Plaintiff, Jaryd Peters, brings Civil Rights: 14th Amendment due process claim for interference with familial relations, state law survivor's action and wrongful-death action as the heir and survivor of Mr. Peters, decedent. Plaintiff is a resident of Galveston County, Texas.

32.     **Defendant, Sheriff Henry Trochesset** is and was at all times relevant to this action the duly elected Sheriff of Galveston County, Texas. The defendant is a "person" under 42

U.S.C. § 1983 and acted under color of law at all times relevant to this case. Trochesset is and was a county policymaker with respect to policies and procedures at the Galveston County Jail and law enforcement along with the private medical contractors. He encouraged the policy of placing inmates in violent or punitive cells that need medical attention instead of transporting an inmate to the hospital to save cost. He discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of his subordinates. Trochesset had direct, personal involvement in the decisions with reference to the plaintiff's housing and medical care. Sheriff Trochesset was personally involved in or had direct responsibility for actions of jailers and medical personnel including physicians, nurses, EMT who knew of Mr. Peter's injuries and refused to help him.   Sheriff Trochesset denied necessary medical treatment to  Mr. Peters.  Such denial amounts to a violation of Mr. Peters constitutional rights including Eighth Amendment rights prohibiting cruel and unusual punishment. Sheriff Trochesset had direct involvement in the decisions regarding inmate housing, medical care and policies.    His conduct in his individual capacity was at all times while he was acting under the color of law.  He can be served  by serving the County Judge of Galveston County, Mark Henry, at 722 Moody Avenue 21 Street, Galveston, Texas 77550 or wherever he may be found. Defendants, **Galveston County Unknown Jailers John Doe and Unknown Officers, John Doe.**   The jailers and officers are sued in their "personal or individual capacity, acting under color of law." They demonstrated deliberate indifference to the serious medical needs of Mr. Peters and who will be served with summons after they are identified.

33.      **Defendant Galveston County** "County" is a unit of local government organized under the laws of the State of Texas. The defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Galveston  County may be served at the Galveston County Judge or wherever he may be found  Galveston County Judge, Mark Henry at 722  Moody Avenue 21 Street,, Galveston, Texas 77550 or wherever found.

34.       **Defendant, Boon-Chapman Benefit Administrators Inc.** Boon-Chapman" is a corporation and was at all times relevant to this action the medical provider under the Memorandum of Understandings (MOU) contract with Galveston County operating with deliberate indifference policies relating to requiring those held in custody in need of medical care to be sent for necessary emergency care only upon reaching critical and/or unstable condition. The corporation is a Travis County corporation and may be served with process through its registered agent at 901 Amberglen  Blvd Building I, Suite 100 Austin, Texas 78729. It was responsible for providing medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Boon-Chapman Benefit Administrators, Inc. is a "person" under 42 U.S.C.§1983 and acted under color of law at all times relevant to this case. It is the policymaker for medical care to the inmates in the Galveston County Jail. It may be served wherever it may be found.

35.      **Defendant, Soluta Health, Inc.** Soluta Health, Inc. "Soluta" is a corporation and was at all times relevant to this action the medical provider operating the Memorandum of Understandings (MOU) under Boon-Chapman's contract with Galveston County. It was

responsible for providing medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Soluta Health is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. It is the policymaker for medical care to the inmates in the Galveston County Jail. It may be served in the Galveston County Jail at 5700 Ball Street, Galveston, Texas 77551, or wherever it may be found.

**Defendant, Administer Kathy White**

36.      Defendant, Nurse Kathy White, R.N. is and was at all times relevant to this action the Policymaker for Galveston County's jail medical department as administrator and nurse for Boon-Chapman and Soluta Health, assigned to the Galveston County Jail serving as the medical department administrator, and a licensed registered nurse at Galveston County's Jail medical department contracted through Boon-Chapman. White is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. She was acting under the color of law during the time of the complaint of conduct below and is sued in her individual capacity. She may be served at the Galveston County Jail, 5700 Ball Street, Galveston, Texas 77551  or wherever she may be found.

**Defendant, Erin Barnhart, Chief Medical Examiner**

Defendant Dr. Erin Barnhart is and was at all times relevant to this action the chief medical examiner for the Galveston County jail and a licensed physician. She may be served at 6607 Hwy 1764 Texas City, Texas 77591, or wherever she may be found. Barnhart directly participated in the misconduct. In addition, she conspired, covered up, discreetly sanctioned,

approved, and knowingly consented to the unconstitutional conduct while acting under the color of law. By refusing to provide the family of Mr. Peters a copy of the unredacted autopsy report almost two years after his death.

37.    Barnhart directly participated in the misconduct by refusing to provide an unredacted autopsy report with the cause of  Mr. Peters' death, in addition, she discreetly sanctioned, cover-up, approved, and knowingly consented to the unconstitutional conduct of the Galveston County Sheriff, jailers, and officers by  agreeing and failing to issue an autopsy report to Mr. Peter's family  identifying the cause of  his death.

## **ADDITIONAL FACTS**

38.    Mr. Jeffrey Lynn Peters resided in Galveston County, Texas, and he is survived by his sons: Jaryd Peters, Bret Peters, Derek Peters. He was loved by many. He loved his sons, grandchildren, mother, extended family, and friends.

39.    He was a family man. He had every intention of securing release from jail and resuming his family life, and embarking on a new career or future  awaiting him upon his release.

40.    Unknown John Doe Officers arrived and saw Mr. Jeffrey Peters stranded on the side of the road in Galveston County, Texas.   Mr. Peters later suffered blunt force trauma, bleeding profusely, and suffered rib fractures, and no Emergency Medical Services was called or provided to Mr. Peters. He inexplicably was taken by the officers into jail custody and not

taken to a hospital.  Mr. Jeffrey Peters suffered from a longtime admitted battle with substance dependency, alcoholism for which he sought help.

41.     On October 12, 2019, Officers took Mr. Peters into Galveston County jail booking.

42.     At the time Galveston County officials took Jeffrey Peters into jail custody, he was a pre-arraignment and pre-trial detainee, his right to medical care for his serious medical need that caused him to collapse and die were violated under the 14th and 4th amendments.

43.     A few hours after he was placed in the custody of Galveston County, Mr. Peters remained in jail booking. Peters began complaining about feeling ill.

44.     On October 12, 2019, the privately operated medical department, Soluta Health, a wholly-owned subsidiary of Boon-Chapman Benefit Administrators Inc., was the jail medical provider.

45.     Mr. Peters began having difficulty breathing after arriving at the jail. He was not properly assessed by the jail's medical providers and instead was placed in a tank for intoxicated inmates. As he was suffering from blunt force trauma, fractured rib, and bleeding profusely.  Galveston did not provide medical care and treatment to Mr. Peters. Mr. Peters' weakened condition was visibly apparent.

46.     Mr. Peters collapsed and became unconscious.

47.     After being unconscious and becoming critical, Mr. Peters's jail medical providers finally summoned emergency medical services to the jail to assist Mr. Peters.

14

48.     Along with the Defendants' failure to provide Mr. Peters with adequate medical care, by evaluating his dizziness symptom, trauma prior to the fall, and breathing problems after the fall, the Defendants refused to transport Mr. Peters to the local hospital until he became gravely ill.

49.     On October 12, 2019, Galveston's medical provider ordered Mr. Peters to be taken to the nearby University of Texas Medical Branch Galveston. He was diagnosed with Acute Respiratory Distress, Cardiac Arrest, Pulmonary Embolism, and Myocardial Infarction. In addition, he suffered blunt force trauma and fractured ribs.

50.     Mr. Peters died at UTMB Galveston within nine days of being transported from Galveston County's jail.

51.     The cause of his death was determined to be a result of Acute Respiratory Distress, Cardiac Arrest, Pulmonary Embolism, and Myocardial Infarction. The blunt force trauma contributed to his death.

52.     Mr. Peters' untimely death was preventable.

53.     The Jail medical staff members failed to properly assess him at booking and monitor him throughout his jail custody.

54.     The Jail medical staff members failed to provide adequate medical care to Mr. Peters. The Doe nurses and Kathy White failed to properly monitor Mr. Peters while he was in jail custody. As a result, he was placed in a punitive jail cell.

55.    Despite Mr. Peters' distress, not one of the Jail medical staff members summoned emergency medical services for Mr. Peters until it was too late.

56.    Trochesset personally adopted Boon-Chapman's eliberately indifferent policy to delay care policy.

57.    The policy was followed by the defendants Galveston County, Kathy White, Trochesstt, Killyon, Becker, John Doe Unknown jailers, John Doe officers ,*et. al.* stated herein was a proximate cause of Mr. Peters' untimely death and moving force resulting in Mr. Peter's constitutional violations.

**Kathy White, aka Kathy Jean Jordan**

58.    Kathy White, aka Kathy Jean Jordan, is the private contractor's healthcare administrator, Boone Chapman, Soluta Health, Inc., a registered nurse and policymaker for Galveston County's jail medical department.

59.    As indicated by her federal criminal conviction, she is a convicted felon for possession of cocaine with intent to distribute.

60.    She has a serious criminal history and substance abuse history involving drugs and alcohol abuse, including an arrest for possession of controlled substance charges and driving while intoxicated charge and conviction.

61.    Kathy White was made aware of Mr. Peters' deteriorating condition. She was deliberately indifferent to Mr. Peters' serious medical needs by failing to allow him to be transported to a hospital without approval.

62.     She had an interest in recovering bonuses based upon her saving money in medical care, so she implemented a policy to reduce inmates' needs for emergency room visits.

63.     This amounts to medical negligence and deliberate indifference to the jail inmates, including Mr. Peters' serious medical needs.

**Boon-Chapman Benefit Administrators Inc.**

64.     Boon-Chapman,  Soluta Health (Collectively "Boon-Chapman") is the private health contractor that was a corporation medical provider under a memorandum of understanding (MOU) contract with Galveston County to provide medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail, it is the parent company of Soluta Health.

65.     Boon-Chapman sets the policy and procedures implemented in the Galveston County jail as it relates to the Galveston County jail medical needs of the inmates. Galveston County adopted Boon-Chapman's policy to allow LVNs to examine, diagnose, or treat, "care" patient's contrary to the authorized scope of practice for LVNs under Texas law. LVNs provide care to patients. Galveston County through Boon Chapmans allows LVNs to perform outside of their scope of practice as a policy and in violation of the Texas Occupations Code. Whether the term care is defined or not Galveston County has a policy to allow LVNs to perform outside of their scope of practice exam, diagnose, or treat. As a result of the policy that allows LVNs to examine, diagnose, or treat patients under the undefined term of supervision, LVNs in the Galveston jail serve as gatekeepers to those

17

licensed with the actual authority to examine, diagnose, or treat patients. When an LVN misdiagnoses a patient and clears a patient, it prevents the patient from being referred to the appropriate medical provider. Based on the policy at the Galveston jail, a patient is seen by a physician after an LVN's examination of a patient and referral. If an LVN assesses a patient and determines no further care is needed the patient is not referred to a physician or other qualified medical providers.

66.     By law, an LVN is not authorized to make a diagnosis.

67.     Boon-Chapman allowed and encouraged Mr. Peters to remain in jail in a drunk tank rather than at a hospital for his serious injuries.

68.      Soluta is a corporation medical provider under contract with Galveston County to provide medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Soluta Inc. was established in April 2015. It is an alter ego for Soluta Health Inc., a technology platform company Soluta allows and encourages its employees to cut costs by refusing its inmates access to emergency medical services at the hospital with Mr. Peters until he collapsed.

69.     Soluta allowed and encouraged Mr. Peters to remain in the detox cell during his stay in the jail.

70.     Soluta has the policy to eliminate expenses at the cost of inmate's health and medical care, refusing to transfer inmates to hospitals unless an inmate's life is in danger.

**Galveston County**

18

71.     Galveston County's policy, practice, and custom is to delegate the duty to provide health care to its inmates, including Jeffrey Peters.  Policy, practice, and custom of cruel and unusual punishment in the Galveston County Jail to limit inmates from being sent to the hospitals opposed to sending the infirmed inmate to the hospital in an effort to cut the cost of care for inmates, delay in providing medical care and failure to provide adequate medical care when an inmate has a serious medical need are unexplainable and copious.

**Other similar and related Documented Deaths in Galveston County's Jail custody in the Past Five Years--Pattern and Practice**

72.     There are likely more deaths, but like  Mr. Peters, they go either unreported to the Texas Attorney General's office or falsely reported due to the fact of the inmate being "released from custody" before being pronounced dead or the death of an unborn child[1].

73.     According to the Attorney General's Custodial Death report[2], in the past five years, at least nine inmates have died in the custody of Galveston County Jail in addition to Mr. Jeffrey Peters after the need of medical care for their serious medical needs, including patients with unstable vital signs and not within normal limits, acutely ill or with questionable. It is not until their condition is critical with unfavorable indicators that Galveston medical will agree to transfer a patient out for emergency medical care. These are just a few examples:

---

[1] Galveston would report deaths of the unborn in the past but has since stopped reporting such deaths.
[2] https://oagtx.force.com/cdr/cdrreportdeaths

74.     On February 28, 2016, an **<u>unborn child of Denise Pope</u>** died. Ms. Pope's child died after she did not receive prenatal care, and began to hemorrhage for hours. She was given a blanket by the only medical person on duty, an LVN, to soak up the blood until a Sargent insisted the LVN order Ms. Pope's transport to the emergency room. Pope was required to experience undue pain and suffering and the loss of her child due to Galveston County's adopted policy from their Medical Contractor, Boon Chapman, and Soluta. See, paragraph 78 below.

75.     On June 27, 2013<u>, **Arthur Lee Linear**</u> was pronounced dead as a result of Galveston County's policy on refusing to send Mr. Linear to the hospital when his vitals were unstable and he requires serious emergency Medical care after complaining of chest pains, resulting in a delay in medical care and ultimately causing his untimely and preventable death.


Arthur Lee Linear

76.     On March 15, 2015, 32-year-old **<u>Jesse Clayton Jacobs</u>** was pronounced dead as a result of Galveston County's policy on refusing to send Mr. Jacobs to the hospital although his vitals were unstable and he requires serious emergency medical care after depriving him of this physician prescribed and monitored Xanax prescription, resulting in a delay in medical care and ultimately causing his untimely preventable death.



77.    Jesse's physician Dr. La Grone, wrote a letter directly to the jail stressing the importance of his Xanax and other medications and that he needed all of the medication every day. Boone Chapman's Soluta health administrator, Defendant Kathy White, ordered Jesse be placed in solitary confinement punitive cell, with no toilet, sink, or bed, after he suffered his first seizure on his 4th day in custody. She ordered that his clothes be taken, he was left nude without shoes as he withdrew from the Xanax that he took for 10 years under the supervision of his psychiatrist  Jesse had seizures every day while held in a solitary cell, alone, nude,  and tortured. He was found bleeding, unresponsive, and in his own feces and vomit. He died one day later.


78.    On February 28, 2016, Ms. Denise Pope's unborn child was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require Medical care, after the pregnant inmate complaining of initially spotting then heaving bleeding, resulting in a delay in medical care and ultimately causing her untimely preventable death of her unborn child.

79.     There are other deaths of individuals that occurred after being held in custody who never came home from the jail or released from jail but died after being transported to the hospital and "released" meaning from jail oversight, prior to their deaths.

80.     The individuals were only released after hospital admission, not only to save money paying for a guard at the hospital, and the medical bills, but primarily, when the prognosis is grim and they could avoid reporting yet another custodial death, and not so their family can visit because the sheriff has full discretion to allow extended visits to those in custody as they suggest.

81.     For example, **Jorge Cortez** never returned home after entering the Galveston jail waiting for transport to a rehabilitation center. He became increasingly ill suffering from a highly fatal form of cancer, although only in the early stages. After numerous pleas for help, submitting an estimated twenty written sick call requests for care, along with a medical care grievance submitted to Kathy White complaining that although he was going to a clinic the LVN, Terry Hanelane refused to get him the care he needed or get him to a person licensed to provide him with care for an examination. His written and verbal complaints about his need for medical care for his serious medical needs. He complained of difficulty breathing and persistent complaints of severe pain for over a week on one occasion without treatment by a physician or an exam, although he was too weak to eat or get out of bed. He was too weak to ambulate and needed a wheelchair.

22

82.     He was transported to the hospital in need of an emergency procedure to rapidly alleviate four liters of fluid from Cortez's lungs.

83.     Cortez was "released" from Galveston jail custody after he was diagnosed with cancer and his prognosis was grim. They continued to check on his condition although he was "released."

84.     Mr. Cortez died on June 19, 2017. His death was not reported to the attorney general of Texas as a custodial death, although he never made it home from jail, and Galveston county maintained his personal property. There are likely other deaths that went unreported.

85.     On November 15, 2017, **Ms. Jerry Louise Biggers-Hill** was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require serious emergency medical care after complaining of breathing difficulty, resulting in a delay in medical care and ultimately causing her untimely preventable death.



86.     On December 22, 2017, **Mr. Barry Edward Phillips** was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require

23

serious emergency Medical care after complaining of breathing difficulty, resulting in a delay in medical care and ultimately causing his untimely preventable death.


Barry Edwards Phillips

87.    On March 14, 2019, **Cotton Glen Ronald,** while in custody at the Galveston County jail died due to medical reasons while under the care of Soluta after the defendants failed to adequately respond to his serious medical needs involving his dehydration symptoms.

88.    On December 25, 2019, **Ronald Different,** while in custody at the Galveston County jail died due to medical reasons while under the care of Soluta after the defendants failed to adequately respond to his serious medical needs involving his cancer symptoms.


89.    In December 2020, **Ariel Ledesma,** while in custody in the Galveston County Jail was brutalized at the hands of its officers. The officer banged the defenseless Mr. Ledsma's head against the wall until the officer got tired and quit. Mr. Ledesma was denied medical care after he suffered severe life-threatening injuries. Although he had serious medical needs due to his condition he was not transported to the hospital until his condition became

critical. Ledesma died. Wunnbeburger was indicted for manslaughter in the death.  suffered

blunt force trauma and



Aerial Ledesma

## Sheriff Henry Trochesset

90.     Sheriff Henry Trochesset is the policymaker for the county with respect to policies

and procedures at the Galveston County Jail ("Jail"). As a result, sheriff Trochesset adopted

the policies of the Medical Provider, Boon Chapman's wholly-owned subsidiary, Soluta

Health.

91.     He discreetly sanctioned, approved, and knowingly consented to the unconstitutional

conduct of the subordinates and contractors. Additionally, sheriff Trochesset had direct

involvement in the decisions with regard to the Plaintiffs' housing and medical care.

92.     Sheriff Trochesset was deliberately indifferent to Jeffrey Peters' serious medical needs

by allowing the contracted medical providers to engage in the policy, practice, and custom of

placing his inmates in need of serious medical care in punitive violent cells. However, the

inmates are not being punished, thereby depriving his inmates of adequate medical care, (or delayed medical care) including Mr. Peters. When the Sheriff failed to train his deputies to transport seriously ill or injured inmates to the hospital, the contracted medical provider failed or refused to do so. When he failed to train his deputies to allow seriously ill or injured inmates to be reassigned to adequate bed assignments when the need is or should be recognized, the medical provider fails or refuses to do so.

93.     Trochesset may not delegate the responsibility of care, although he may delegate the duty of care. Trochesset is ultimately responsible for inmate care as the sheriff. Trochesset is a state actor required to provide medical care to jail inmates.

94.     He was personally involved with Peters' care since he had a duty to provide Mr. Peter with adequate medical care for his serious medical needs.

95.     Trochesset's adoption of Boon Chapman's unconstitutional policies to require individuals to wait until they are at a critical stage and allow LVNs to treat patients by causing the delay and denial of care when he had a serious medical need related to his difficulty breathing each had knowledge of Mr. Peters's need for medical care after he submitted   He was also responsible for the inmates' care, conditions of confinement at the Galveston County jail, including healthcare, food, clothing, and housing.

96.     He failed to properly train, supervise or discipline the medical providers and jailers relating to the care of the inmates to ensure the inmates under his care, custody, and control received adequate medical care. He failed to train the medical providers and jailers to

properly assign inmates to hold cells and beds that caused their conditions to worsen or become fundamentally dangerous when an inmate is suffering from a serious medical need.

97.     Trochesset is personally liable for the unconstitutional treatment of Mr. Peters, as a policymaker, along with the other appellees, supervisor of the medical contractor, Soluta/Boon-Chapman, White-HSA, SSP-Killyon, and

## Policies, Practices and Culpable Conduct

98.     The risk of harm and death was well known in the Galveston County jail on or about October 21, 2019, by each defendant including, Galveston County, Galveston County's Sheriff Trochesset, Doe Administrators, Doe Deputies, the Health Care administrator, Kathy White,  Dr. Beach, Doe Physicians, Doe Nurses, and Doe Physician Assistants.

99.     The risk of harm and death by allowing an injured or ill inmate in need of hospital care to remain in custody and not be transported for emergency care was well known in the Galveston County jail on or about October 21, 2019, Galveston County, Galveston County's Sheriff Trochesset, the Health Care administrator, Kathy White, and Boon Chapman/Soluta health.

100.    Since  Mr. Peters, injury and death occurred two years after another inmate, Mr. Jesse C. Jacobs, suffered the same type of demise due to the failure to transport while in the Galveston County's Jail.

101.    Boon-Chapman and Galveston County, through its Sheriff Trochesset and Healthcare Administrator, directed the Jail staff, and its medical staff members to follow the policies,

27

practices, and customs of not allowing inmates who are in need of emergency care to be transported to the hospital while in the custody of the Galveston County jail, which caused inmates to suffer, untreated, serious life-threatening symptoms.

102.    Such policies, forbidding emergency medical attention to inmates in the Galveston County jail, unless the inmates are at the brink of death, and only by the medical department personally caused the unreasonable risk of harm.

103.    By following such policies, Defendants were deliberately indifferent to the serious severe symptoms and medical needs of Mr. Peters.

104.    Galveston County Sheriff Henry Trochesset, Galveston County, Boon-Chapman, Soluta Health, and Kathy White were also deliberately indifferent to the serious medical needs of Mr. Peters by failing to train staff and implement jail policies, practices, customs, and usages that adequately addressed the obvious and known health and safety risks to inmates entering the Jail and injured while in the County jail's custody.

105.    Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, and Kathy

106.    Kathy White, the supervisors, failed to train staff when emergency services should be summoned to take an inmate to the local hospital emergency room, as opposed to the FSP violent cell. Galveston County Sheriff Henry Trochesset, Galveston County, Boon-Chapman, Soluta Health, and Kathy White acted with deliberate indifference to the

28

serious medical need of Mr. Peters when Mr. Peters began demonstrating severe symptoms shortness of breath, chest pains, the weakness which went untreated, beyond ibuprofen.

107.    Galveston County Sheriff Henry Trochesset, Galveston County, Boon-Chapman, Soluta Health, and Kathy White acts and omission are violations of Mr. Peters' constitutional right to be free from cruel and unusual punishment and receive adequate medical care resulted from a policy, pattern, custom, and practice of deliberate indifference to the serious medical needs of its inmates and Mr. Peters' failure to assess, diagnose, monitor, treat and transport seriously injured inmates came at the direction and encouragement of the policymakers, Galveston County Sheriff, Henry Trochesset, the Health Care administrator, Kathy White, and Dr. Garry Killyon. The Defendants ignored Mr. Peters' complaints, intentionally failed to provide medical treatment for him, and had wanton disregard and deliberate indifference to Mr. Peters' serious medical needs when he complained of difficulty breathing, visibly injured, and suffered fractured ribs.

108.    Galveston County has a practice of withholding medical records, autopsy, and basic information about the inmate's death. Tex. Gov. Code § 552.029(8) requires basic information that must be released including the time and place of the incident, the names of inmates and of department employees who were involved, a brief narrative of the incident, a brief description of any injuries sustained by anyone involved, and information regarding any criminal charges or disciplinary actions that were filed as a result of the incident.

109. This information was not provided in any of the custodial death reports, only the very limited facts.

## Medical Examination Autopsy of Jeffrey Lynn Peters

110. The Chief Medical Examiner of Galveston County, Dr. Erin Barnhart, charged with the responsibility for Galveston County autopsy, continues to withhold the unredacted autopsy either by choice or at the direction of the former Galveston County Sheriff or the District Attorney.

111. Barnhart is responsible for each death report and autopsies in Galveston County. See, *Texas Code of Criminal Procedure* Art. 49.25:

Sec. 11. Records

(a) The medical examiner shall keep full and complete records properly indexed, giving the name if known of every person whose death is investigated, the place where the body was found, the date, the cause and manner of death, and shall issue a death certificate. The full report and detailed findings of the autopsy, if any, shall be a part of the record. Copies of all records shall promptly be delivered to the proper district, county, or criminal district attorney in any case where further investigation is advisable.

 The records may not be withheld, subject to a discretionary exception under Chapter 552, Government Code, except that a photograph or x-ray of a body taken during an autopsy is excepted from required public disclosure in accordance with Chapter 552, Government Code, but is subject to disclosure:

(1) *under a subpoena or authority of other law; or*

(2) if the photograph or x-ray is of the body of a person who died while in the custody of law enforcement.

(b) Under the exception to public disclosure provided by Sub§ (a), a governmental body as defined by § 552.003, Government Code, may withhold a photograph or x-ray described by Sub§ (a) without requesting a decision from the attorney general under Subchapter G 1, Chapter 552, Government Code. This sub§ does not affect the required disclosure of a photograph or x-ray under Sub§ (a)(1) or (2).

## Efforts to obtain Autopsy, toxicology report, photographs, blood tissue samples, and related

112.    Jaryd Peters requested a copy of his father's autopsy from the Galveston County Medical Examiner's Office and provided the required completed forms from the Medical examiners' website.

●     In November 2019, Jaryd Peters requested a copy of his father's autopsy report from

the Medical Examiner.

●     November 20, 2019, Jayrd Peters received a letter from the Galveston County 2020

Jayrd Peters requested a copy of his father's autopsy report.

●     Medical Examiner stating:

*The 2019 letter "The ME office received your request for information seeking a post mortem exam report on Mr. Jeffrey Lynn Peters case number  ME 01 2019 673. A copy of your request for information is enclosed. The  ME Office does not have information responsive to your request for information, as the examination report is not yet in existence.  In the event you continue to want a copy of the report, you will need to submit another request for information in the future. Please allow up to 60 days from the date of the exam to the completion of the report. Sincerely, Public Information Officer Medical Examiner's Office Galveston County"*

●     In December 2019, Jaryd Peters made another request for a copy of his father's

autopsy report.

●     December 30, 2019, he received the same response from the Galveston County

Medical Examiner:

●     "The ME office received your request for information seeking a post mortem exam

report on Mr. Jeffrey Lynn Peters case number  ME 01 2019 673. A copy of your request for

information is enclosed. The  ME Office does not have information responsive to your

request, as the examination report is not yet in existence.  In the event you continue to want a copy of the report, you will need to submit another request for information in the future. Please allow up to 60 days from the date of the exam to the completion of the report. Sincerely, Public Information Officer Medical Examiner's Office Galveston County.

- February 7, 2020, Jaryd Peters received a call that his father's autopsy report was ready from the Galveston County Medical Examiner's office.

- Jaryd Peters was notified the autopsy was completed

- The ME's office told Jaryd Peters in Galveston he had to complete another form as his prior request expired.

- Jaryd Peters counsel requested a copy of Jefferey Peters autopsy and hand-delivered the written request from Jaryd Peters to the Manager  of the Galveston County Medical Examiner's office

- No autopsy report, photographs or toxic screen, etc., was provided to counsel.

- Jaryd Peters was notified by the Galveston County District Attorney, Jack Roady, that because his father's death was under criminal investigation, no autopsy report will be provided.

- A copy of the correspondence was sent to Galveston County Chief Medical Examiner Erin Barnhart.

● Jaryd Peters' counsel filed a Verified Petition under Rule 27 for pre-suit discovery on June 23, 2020, requesting the deposition of the Chief Medical Examiner.

● The court ordered the production of the witness for a deposition and the autopsy report, toxicological report, photographs, and preservation of the blood, tissue samples, and related samples.

● According to the Texas Public Information Act, an autopsy report is public information and may be released to anyone who requests a copy unless there is an exception under the law.

● Despite autopsy reports being public records, Erin Barnhart's Counsel produced a purported autopsy report completely redacted (blackened out) document saved for the identity of the alleged person in Galveston County that performed the autopsy. She defied Judge Lynn Hughes' original court order and claimed this was a matter under criminal investigation. After the alleged criminal investigation concluded no autopsy report with the cause of death has been provided to the family.

113.   The cause of death of for Mr. Jeffrey Peters has been concealed by Dr. Barnhart, as a matter of policy and practice of Galveston County, she is the policymaker for the medical examiner's office and promulgated the policy of withholding the autopsy reports of individuals that have died after entering the Galveston Jail or released to the hospital to the jail.

33

114.    Cortez-the family had difficulty obtaining Galveston County medical records and autopsy reports.

115.    Swartz- the family had difficulty obtaining Galveston County medical records and autopsy reports.

116.    She has sought an attorney general's opinion citing an ongoing investigation for each and every law enforcement custodial death without citing what investigation is ongoing.

117.    The harm suffered was the result of Defendants' conduct motivated by evil intent and with callous deliberate indifference to the federally protected rights of Mr. Peters and his son. The Defendants further engaged in efforts to impede discovering the constitutional violations by covering up, withholding, and destruction of records, including video and audio of Mr. Peters while in the custody of Galveston County Jail. Defendants acting jointly and severally, causing the death.

118.    In addition to the civil rights violations, Defendant Galveston County has blocked and refused the release of jail records, video and audio recordings depicting Mr. Peters' entire period of incarceration in the Galveston County Jail, the full and complete set of medical records of Mr. Peters in the Galveston County Jail, the audio and video recordings of intake in an effort to prevent Plaintiffs from discovering exactly what happened to Mr. Peters while in the custody of the Galveston County Jail.

119.     Defendants were deliberately indifferent to Mr. Peters' serious medical needs, failed to diagnose, adequately treat,  and provide medical care for his medical conditions, and subjected him to unreasonable conditions of confinement.

120.     Mr. Peters' Fourth Amendment and Fourteenth Amendment rights have been violated by the following individuals and entities: Galveston County Sheriff Henry Trochesset, Galveston County, Boon-Chapman, Soluta Health, Kathy White, Garry Killyon, Alexis Ensley, and Kimberly Boykins, Doe County Administrators, Doe Deputies, jailers and officers the Health Care administrator, Doe Physicians, Doe Nurses, and Doe and Erin Barnhart.

121.     The official policy or custom of which Sheriff Trochesset violated was failing to train or supervise the contract medical providers hired to provide medical care to the Galveston County inmates. Allowing and adopting a policy that allowed inmates to remain confined instead of receiving emergency medical care from a hospital. 103. These acts and omissions by the Sheriff was a policy implemented by Sheriff Trochesset by adopting the medical provider's policy.

122.     This failure to seek emergency service for Mr. Peters and the delay in medical care was a constitutional violation whose "moving force" is that policy or custom to allow inmates to remain in custody until in critical need of emergency care and not be transported to the hospital.

123.    The known and foreseeable risks are avoided by responding to an inmate's serious medical needs.

124.    The policy of Sheriff Trochessetand, Galveston County policies, caused the injury of Mr. Peters and deprived Mr. Peters of his constitutional right.

125.    Sheriff Trochesset's policy of allowing ill inmates with serious medical needs to remain in custody until they are in beyond serious or in critical medical condition instead of being sent to the hospital at an earlier stage when the serious medical need arises is persistent and widespread in the Galveston County Jail as having the effect of law. A pattern of incidents has occurred because of this policy, causing further injury to other inmates.

126.    All Jail medical staff are aware of the policy that they are not to call for emergency transport to the hospital even if the immediate need exists unless there is approval first and only by medical personnel.

127.    Mr. Peters's rights were violated based on denial of medical care before the delay in medical care and ultimately inadequate medical care.

## V. CLAIMS

### Count One- Galveston County's Liability Under *Monell*

118. Plaintiffs incorporate all preceding paragraphs as if set forth throughout the Complaint. Plaintiff asserts claims under the Eighth Amendment.

119. Galveston County has a custom, policy, practice, and procedure of:

denying transport to the hospital to all persons in the jail, including Mr. Peters with verifiable emergency medical needs, knowing the risks; as was the case with other inmates, Jesse C. Jacobs, Jerry Biggers Hill, Denise Pope, Cotton Ronald Different.

● refusing to transport inmates from the jail to the hospital and placing inmates in violent cells;

● delaying treatment of inmates with serious medical needs, difficulty breathing, and a punctured lung, caused by the denial of a simple request to be transported;

● failing to treat inmates suffering injuries knowing the risks adequately;

● failing to transport inmates with serious emergency medical needs to the hospital settings as Mr. Peters experienced.

● failing to discipline or train and supervise deputies allowing untrained in medical personnel and deputies to complete a Jail Death Report to the State Attorney General's office; not having the proper policies in place to prevent the Constitutional violations suffered by plaintiffs as herein described;

● failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading jailers and officers to believe their actions will never be meaningfully scrutinized.

● The County of Galveston directly encouraged future uses of excessive deadly force, unlawful detention, failures to intervene, and policing the mentally ill.

37

- Conduct is as a matter of widespread practice so prevalent as to comprise policy; officers and jailers of the Galveston County Jail violate the constitutional right of individuals in a manner similar to that alleged by Mr. Peters in this complaint on a regular basis, yet the Galveston County violate the constitutional right of individuals in a manner similar to that alleged by Mr. Petter in this complaint on a regular basis, yet the Galveston county Sheriff investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

- As a result of the Galveston County Sheriff's policies and practices and the unjustified and unreasonable conduct of the Defendants, Plaintiff has suffered injuries, including severe emotional distress and ultimately death.

- The County has ratified each use of deadly force by its officers as demonstrated through its actions after the use of deadly force.

- Sheriff Trochessett, as the County of Galveston, has ratified its officers and jailers' conduct in nearly every case of use of deadly force by its officers.

- The Medical Examiner, District attorney, and Sheriff of Galveston agreed not to release the autopsy or video to the family.

120. As alleged herein, multiple instances of misconduct by Galveston County and the sheriff and deputies of the Galveston County Sheriff's  establishes that Galveston County is legally responsible for the conduct of Boon-Chapman Benefit Administrators Inc., Soluta,

Inc, Soluta Health, Inc, Kathy White, Aka, Kathy Jean Jordan, Doe Policy Makers, and Doe Medical Provider 1-25

• A final policymaker, acting under the color of law, who had final policymaking authority concerning the acts of the officer defendants, ratified the acts of officer and jailers and the bases for them. The final policymaker knew of and specifically approved of the officers and jailers' acts.

• The final policymaker determined that the acts of the officer/jailer defendants were "within policy."

• The policymaker has not found discipline for the use of force by his officers or jailers in numerous cases of use of deadly force since 2010.

• Galveston county is labeled if its policymakers condone or otherwise adopt the creation of a custom by knowingly ratifying the illegal or unconstitutional actions of subordinate, non-policymaking employees.

• The use of force by the Unknown officers or jailers was unjustified, absent immediate danger to the officer, the public, or himself.

• The officers/jailers who engaged in unreasonable use of deadly force in Galveston County have not been disciplined, reprimanded, retrained, suspended or otherwise penalized in connection with Mr. Peter's death or the death of any others leading up to the death of Mr. Peters.

● By reasons of the acts and omissions, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Petters. The acts and omission also caused Mr. Peter's pain and suffering, loss of enjoyment of life, and ultimately death.

## Count Two--Supervisor Liability

128. Plaintiff incorporates the facts as set forth herein. Sheriff Trochesset, nurse Kathy White as supervisors failed to train, supervise. or discipline the officers or contractor who attended or should have attended to Mr. Peters.

129. The failure to train or supervise constituted deliberate indifference to Mr. Peters' right to adequate medical care, timely medical care and denied him his constitutional right to adequate medical care for his injuries.

130.

131.

## Count Three- Ratification/Acts of Policymaker

132. Plaintiff incorporates the facts as set forth herein. Mr. Peters incorporates all preceding paragraphs as if fully set forth herein.

133. Mr. Peters was visibly injured, and he complained of inability to breathe and pain but his need for medical treatment to the Jailer of which the only one responded, after an unreasonable delay.

134.    Sheriff Andrew Trochesset is the relevant policymaker, yet nothing was done to remedy the medical complaints or the visible injuries.

135.    The failure to provide medical care to visibly injured or detainees who complain of injuries happened in several previous and subsequent cases where denial of medical care occurred, resulting in injuries and death. The Jacobs, Pope, Linear, Biggers cases referenced above.  As such, Galveston County ratified Sheriff Trochesset, nurse Kathy White, Gary Beach, actions as Galveston County and their own policies, practices, customs, and procedure violated Mr. Peters' civil rights.

**Count Four- Municipal Liability-Failure To Train**

Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

123. The officer/jailer defendants acted under the color of law.

124. The acts of the officer defendants deprived Mr.  Peters and Plaintiffs of their particular rights under the United States Constitution.

125. The training policies of Defendant Galveston County were not adequate to train its officers/jailers to handle the usual and recurring situations with which they must deal, including with regard to the use of force, de-escalation of the mentally ill, crisis intervention training, and mentally ill profiling, rendering life-saving measures during police-involved incidents and implicit bias.

126. Defendant Galveston County was deliberately indifferent to the obvious consequences

of its failure to train its police officers adequately, including with regard to the use of force, rendering medical aid, and communicating with the mentally ill.

127. The failure of Defendant Galveston County to provide adequate training caused the deprivation of Plaintiff's rights by the Officer/ jailer defendants; that is, the defendants; failure to train is so closely related to the deprivation of Mr. Peter and the Plaintiffs' right as to be the moving force that caused the ultimate injury, Mr. Peter's death.

128. By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Peter. The aforementioned acts and omissions also caused Mr. Peter's pain and suffering, loss of enjoyment of life, and death.

## Count Five- Denial of Medical care, delay of medical care, and inadequate Medical care, 42 U.S.C. § 1983

129. Plaintiff incorporates herein the facts as set forth herein. All prerequisites for filing suit have been satisfied that Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, and Kathy White owed Mr. Peters a duty to provide him adequate medical care.

130. After Mr. Peters was struck, he was bleeding, moaning, groaning from pain, and in obvious and critical need of emergency medical care and treatment.

136.    However, rather than treating Mr. Peters immediately, calling for medical personnel or EMS, or transporting him to a hospital to treat his injuries that resulted from the blows, the jailers and officers used unreasonable force. While acting under the color of law, they

handcuffed Mr. Peters as officers stood by and allowed the officer to engage in the unreasonable use of force.

137.    After striking Peters, he was thrown on his backside and handcuffed.

138.    The officer did not provide life-saving measures, timely summon medical care, or permit medical personnel to treat Mr. Peters.

139.    The denial and delay of medical care to Mr. Peters caused Mr. Peter's extreme physical and emotional pain and suffering and was a contributing cause of Mr. Peter's death.

140.    The denial of medical care by the officers and jailers deprived Mr. Peters of the right to be secure in his person against unreasonable searches and seizures guaranteed to Mr. Peters under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

141.    Mr. Peters was frightened, suffered conscious pain and suffering, great physical pain and emotional distress up to the time of death, and also suffered the loss of enjoyment of life, loss of life, and loss of earning capacity.

142.    The Unknown officers and jailers knew that failure to provide timely medical treatment to Mr. Peters could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Mr. Peter's great bodily harm and death.

143.    The conduct of the officer and jailer defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Peters and therefore warrants

the imposition of exemplary and punitive damages as to the officer/ jailer defendants. The defendants failed to render any medical care to Mr. Peters after being detained by blunt force trauma for unknown reasons.

144.    The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with deliberate indifference or willful indifference to Mr. Peter's constitutional rights.

145.    As a result of their misconduct, the officer and jailer defendants are liable for Mr. Peters's injuries, either because they were integral participants in the denial of medical care or failed to intervene to prevent these violations.

### Count Six-Conditions of Confinement- Galveston County, Soluta Health And Boon-Chapman

146.    Plaintiff incorporates the facts as set forth herein.

147.    The conditions of confinement in the Galveston County Jail were such that Mr. Peters was placed in a detoxification cell designed for inmates who have alcohol or substance abuse when he suffered a fractured rib, blunt force trauma, and dizziness. Peter's case was not intoxication issues but those who need medical attention.

148.    These conditions caused him to fall. In addition, the detox cell created a risk of additional injury that is even greater where no place habitable for humans exists, as is the condition in the Galveston County Jail.   Peters' last days consisted of a concrete floor with a polyurethane coating as hard as the concrete layer until he was hospitalized.

149.    The video for which Galveston County confined Peter existed but was not provided in this case.

150.    These conditions create additional harm and damages to Mr. Peters.

### Count Seven-Texas Wrongful Death And Survivorship Action 42 U.S. C. § 1983 and Tex. CPRC § 71.002-71.021

151.    Plaintiff incorporates herein the facts as set forth throughout the complaint. Plaintiff files these his wrongful death and survivor action against each Defendant, Galveston County Sheriff Henry Trochesset, Galveston County, Boon-Chapman, Soluta Health, Kathy White, the Health Care administrator, pursuant to Texas Wrongful Death Statute and Survivorship Statute and asserts that Mr. Peters death was a result of the defendant's acts and omissions.

152.    Defendant's  owed the decedent, Mr. Peters a duty of care to provide him medical care and treatment in the Galveston Jail. The defendant breached that duty by failing to transport him to a hospital, depriving him of medical care and monitoring, failing to transport him to a hospital after suffering the blunt force trauma and not medically monitoring his  condition.  Defendants actions toward Mr. Peters violated Peter's constitutional rights and wrongfully caused the death of Mr. Peters, and without those actions, the death of Mr. Peters would not have occurred.

153.    Mr. Peters prior to his death, suffered serious personal injuries, including but not limited to severe pain and emotional distress from the blunt force trauma wounds Defendants inflicted upon him.

154.     Both Mr. Jayrd Petters and his brothers suffered from pecuniary loss as a result of the wrongful death of Mr. Peters and mental anguish as a result of the wrongful death of Mr. Peters.

155.     Medical providers and officers listed above, including Kathy White, were aware of the foreseeable risk of depriving Mr. Peters of his request for medical care. They nonetheless deprived Mr. Peters of his request, and he was injured due to this deprivation, inadequate medical care, and delay in providing medical care. He essentially was left to die.

156.     The conduct of the medical providers was grossly negligent. Rather than treating Mr. Peters immediately or calling for medical personnel or EMS to treat his injuries that resulted from the blunt force trauma wounds, Defendants used unreasonable force and drugged Mr. Peters and handcuffed him, as officers and jailers stood by and allowed the officer to engage in the unreasonable use of force.

157.     Defendants, Unknown Jailers, Unknown  Galveston County, Sheriff Henry Trochesset, caused the wrongful death of Mr. Jeffrey Peters resulting in damages recoverable under Tex. CPRC §71.002.

**Count Eight-Fourth, Eight and Fourteenth Amendments of the United States Constitution Violations for Unreasonable search and seizure-excessive Deadly Force 42 U.S. C. § 1983**

158.     Plaintiff incorporates herein the facts as set forth herein. Accordingly, all prerequisites for filing suit have been satisfied that Galveston County Deputies, and Jailers engaged in unreasonable excessive force against Mr. Peters.

159.    Defendants, unknown jailers, and officers trained and supervised by Trochessett acting under color of law used unreasonable force and excessive force against Mr. Peters when they struck him in the head, causing blunt force trauma to Mr. Peters. Additionally, the officers/ jailers acted with deliberate indifference to the rights of Mr. Peter. Because of Defendants, unknown jailers, and officers' action of striking Mr. Peters during the seizure, it violated Mr. Peter's constitutional rights, including but not limited to those under the Fourth, Eight  and Fourteenth Amendments of the United States Constitution.

160.    The misconduct described in this claim striking Mr. Peters was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of Mr. Peters.

161.     Mr. Peters was not armed, posed no immediate threat to the safety of the officers or the public, did not resist arrest, and was not dangerous.

162.    Mr. Peters was an unarmed citizen. The misconduct and excessive force described in this claim "shocks the conscience."

**Count Nine-Medical Negligence – Chapter 74 Texas Healthcare Liability Act.**

163.    Plaintiff incorporates herein the facts as set forth herein. All perquisites for filing suit have been satisfied that Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, and Kathy White owed Mr. Peters a duty to provide him adequate medical care.

164.    Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, Kathy White, breached their duty of care and deviated from the standard of care for healthcare medical physicians, nurses, medical providers by:

a.    failing to assess Mr. Peters' complaints of dizziness, pain, and visible injuries;

b.    failing to allow him to be immediately transported to the hospital prior to  or immediately after booking for the blunt force trauma, fractured ribs;

c.    failing to  provide adequate medical care;

d.    failing to transport Mr. Peters to a hospital after becoming aware that Mr. Peters was suffering from serious medical needs;

165.    Finally, they breached their duty to medically monitor Mr. Peters when he was housed in the jail.

166.    As a result, this breach of care. Denial of medical care, delay in medical care and refusal to transport to a hospital was a proximate cause of Mr. Peters' pain and suffering, and ultimately his death; A  preventable death.

167.    Defendants failed to recommend that Mr. Peters be transported to a hospital once he learned Mr. Peters was complaining that he could not breathe and was having pain that could not be addressed at the jail.  Mr. Peters suffered damages.

**DAMAGES**

168.    Plaintiffs request the following relief:

48

**Punitive Damages**

169.    Plaintiffs request punitive damages against each individually-named defendant. Exemplary damages based on the conduct of refusing to discourage the summoning of emergency services for Mr. Peters and allowing Mr. Peters to continue to suffer daily locked in a violent cell without access to a toilet and an ultimately a humiliating death without regard to his serious medical needs, while in the custody of the Galveston County Jail and care of Boon-Chapman, Soluta Health's medical personnel, Physicians, Nurse Practitioner, Registered Nurses, Licensed vocational nurses, emergency medical technicians, that was outrageous, malicious, and morally culpable.

170.    Mr. Peters's death resulted from the joint and several acts and omissions of Defendants for which Plaintiffs seek punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct;

171.    Award punitive damages against Galveston County and Galveston County Sheriff, Henry Trochesset, Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, Kathy White in an amount to be shown at trial;

172.    These actions hereby entitle Plaintiffs to punitive/exemplary damages;

**Actual Damages**

173.    Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

174.    As wrongful death beneficiaries, Plaintiffs seeks actual damages, both general and special, for the loss of their father, Mr. Peters, for the following specific elements of damages:

175.    Pecuniary loss resulting from the death of Mr. Peters including, but not limited to, the care, maintenance, support, services, education, advice, counsel, and reasonable contributions of a pecuniary value, loss of inheritance that the surviving family would have received from Mr. Peters, had he lived.

176.    Termination of the Family Relationship: The positive benefits flowing from the love, support, companionship, and society that Mr. Peters and Mr. Peters, would in reasonable probability, have received from Mr. Peters, had he lived.

## Pain and Suffering

177.    Physical pain and suffering sustained by Mr. Peters from the time of the incident until his death;

178.    Reasonable and necessary medical expenses, reasonable and necessary funeral and burial expenses.

179.    Reasonable and necessary medical expenses for Mr. Peters from the time of the incident until the time of his death; and Reasonable and necessary funeral and burial expenses. Attorney's Fees.

180.     Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S. C. § 1983 and 1988 including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs.

### Mental Anguish

181.     Mental Anguish was suffered by Mr. Peters during the days in jail prior to his death. Mental anguish sustained by Mr. Peters from the time of the incident until his death; Mental anguish suffered by Mr. Peters sons after almost two years of not being provided an unredacted autopsy report.

182.     Mental Anguish suffered by His surviving sons and the surviving family as a result of the death of Mr. Peters, including, but not limited to, the emotional pain, torment, and suffering that Plaintiff would, in reasonable probability, experience from the death of Mr. Peters.

### Physical Impairment

183.    Physical Impairment was suffered by Mr. Peters during the days in Galveston County's custody while in jail prior to his death. Physical Impairment was suffered by Mr. Peters from the time of the incident until his death.

### Loss of Inheritance

184.    The earnings, if any, of the deceased in excess of the amount they would have used for the support of themselves and their families, and which in reasonable probability would have been added to their estates and left to Plaintiffs at their natural death had he lived.

## Compensatory Special Damages

185.   Including, but not limited to, funeral expenses; Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

## Medical expenses, Funeral and Burial Expenses

186.   Plaintiffs seek to recover all costs associated with the burial and funeral services for Mr. Jeffrey Peters. Reasonable and necessary Reasonable and necessary funeral and burial expenses.

187.   Plaintiffs seek reasonable and necessary medical expenses for Mr. Peters from the time of the incident until the time of his death; and Reasonable and necessary funeral and burial expenses.

## Attorney's Fees

188.   Plaintiffs are entitled to recover attorney's fees and costs under 42 U. S. C. §1983 and 1988 including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs Equitable Relief.

## Compensatory Special Damages

189.   Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

## Additional Damages

190.    Plaintiffs seek to recover all court costs, fees, expenses, and expert fees. Pre and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

**Equitable relief**

191.    Equitable relief, including, without limitation, that Galveston County and Sheriff Trochesset be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and declaratory relief, as the court may deem proper.

## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

192.    Galveston County through Sheriff Trochessett received a letter of preservation on or about November 21, 2019, requesting and demanding that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit or the damages resulting therefrom. It warned failure to maintain such items shall constitute a "spoliation" of the evidence.

## TOLLING

193.    Tolling of the statute of limitations is required. Plaintiffs seek to plead any applicable tolling provisions against any defendant that might assert and are required to negate in an effort to a bar claims to suit based on limitations since full information involving Mr. Peters's death is being withheld relating to the individuals involved, and additional details. Plaintiffs

seek to plead any applicable tolling provisions against any defendant that might assert a bar to suit based on limitations.

## JURY REQUEST

Plaintiffs respectfully demand a trial by jury.

## PRAYER

WHEREFORE , PREMISES CONSIDERED, Plaintiffs, Estate of Jeffrey Peters, sons and Heirs of Jeffrey Peters respectfully pray that Defendants be summoned to appear and answer herein, and that upon a final hearing of this cause, that judgment is entered for the Plaintiffs and against Defendants, both jointly and severally, for all damages requested herein, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity. Punish each Defendant, and deter others from engaging in similar conduct;

Plaintiffs assert that the death of Mr. Peters was the result of government actors, individually and collectively caused the death and harm suffered was the result of Defendants' conduct motivated by evil motive or intent or done recklessly or with callous deliberate indifference to the federally protected rights of Mr. Peters, and hereby entitle Plaintiffs to punitive and exemplary damages.

54

Equitable relief, including, without limitation, that Galveston County and Sheriff Trochesset be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and declaratory relief, as the court may deem proper.

Respectfully submitted,
/s/ *Debra V. Jennings*
Law Office of Debra Jennings
Debra V. Jennings
State Bar No. 10631850
Federal Bar No.14373
6140 HWY 6, # 269
Missouri City, TX 77459
Attorney for Plaintiff
Phone: (832) 904-4666
Fax:   1(832) 442-3700
Email: *lawyerdvj@gmail.com*

By: /S/U.A. Lewis
The Lewis Law Group, PLLC.
U. A. Lewis
State Bar No. 24076511
Federal Bar No. 1645666
P. O. Box 27353
Houston, TX 77227
Telephone: (713)570-6555
Facsimile: (713) 581-1017
ATTORNEYS FOR THE PLAINTIFFS