**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **ESTATE OF JEFFERY L. PETERS** | § | |
| **AND JARYD PETERS,** | § | |
| **INDIVIDUALLY AND AS** | § | |
| **REPRESENTATIVE OF ESTATE** | § | |
| **OF JEFFERY L. PETERS,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:21-cv-00256** |
| | § | |
| **GALVESTON COUNTY, SHERIFF** | § | **JURY DEMANDED** |
| **HENRY TROCHESSET,** *in his* | § | |
| *individual capacity,* **BOON-** | § | |
| **CHAPMAN BENEFIT** | § | |
| **ADMINISTRATORS INC.,** | § | |
| **SOLUTA, INC., SOLUTA HEALTH,** | § | |
| **INC., CHIEF MEDICAL** | § | |
| **EXAMINER,** | § | |
| **ERIN BARNHART in her** *individual* | § | |
| *capacity* **and Officer MCINNIS in his** | § | |
| *individual capacity,* | | |
| **Defendants.** | | |

**DEFENDANTS GALVESTON COUNTY AND
SHERIFF HENRY TROCHESSET'S MOTION TO DISMISS
PLAINTIFFS' (CORRECTED) SECOND AMENDED COMPLAINT**

Defendants GALVESTON COUNTY and SHERIFF HENRY TROCHESSET

(collectively, the "County Defendants") file this Motion to Dismiss Plaintiffs' (Corrected)

Second Amended Complaint, and in support thereof, would respectfully show the Court

the following:

## I.    INTRODUCTION

Plaintiffs Jaryd Peters and Estate of Jeffrey Peters' ("Plaintiffs") (Corrected) Second Amended Complaint ("Complaint") is replete with insufficiently pled causes of action and claims that fail as a matter of law.  This matter arises from the death of Jeffrey Peters ("Peters") four (4) days after he was found unresponsive in his cell in the Galveston County Jail.  In response to the Plaintiffs' First Amended Complaint, the County Defendants filed a letter pursuant to this Court's procedures notifying Plaintiffs of the various grounds they contend the claims against them are subject to dismissal.  Plaintiffs did not directly respond to the letter, but instead filed the instant Complaint.  Because the Complaint does not remedy the numerous issues raised in the County Defendants' letter, the County Defendants now timely file this Motion to Dismiss.

Plaintiffs assert multiple federal causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983") and state causes of action against Galveston County ("County") and Galveston County Sheriff Henry Trochesset ("Sheriff Trochesset"), namely: (1)  a *Monell* claim for County liability based on the Eighth Amendment; (2) a failure to train and supervise claim against Sheriff Trochesset; (3) a failure to train and supervise claim against the County; (4) a Ratification claim against the County; (5) a Fourteenth Amendment condition of confinement claim against the County; and (6) state law negligence claims for wrongful death and survivorship against the County Defendants.

All of Plaintiffs' causes of action fail as a matter of law on a number of grounds. Addressing each claim in turn, first, Plaintiffs' *Monell* claim against the County based on

the Eighth Amendment fails as a matter of law because the protections of the Eighth Amendment are not applicable to pretrial detainees such as Peters.

Second, Plaintiffs' failure to train and supervise claim against Sheriff Trochesset is subject to dismissal because Sheriff Trochesset is only sued in his official capacity, and, thus, the claim against him is duplicative of the same claim brought against the County.

Third, the failure to train and supervise claim against the County is conclusory and fails for multiple reasons: there are no specific allegations that Sheriff Trochesset (the only supervisor identified by Plaintiffs) failed to train or supervise County Jail staff or had actual knowledge of any alleged deficient training or supervision.  There are also no specific allegations establishing deliberate indifference, a necessary element of this claim.

Fourth, Plaintiffs' allegations that Sheriff Trochesset "did nothing" with respect to Peters does not rise to the level of "extreme factual scenarios" needed to establish a theory of ratification under *Monell*.

Next, Plaintiffs' Fourteenth Amendment condition of confinement claim fails because the actual harm of which they complain is the alleged acts and omissions of the County Jail staff, not the general conditions, practices, or rules of the Galveston County Jail.  Furthermore, to the extent the Court rules that Plaintiffs have actually pled a condition of confinement claim and not an episodic act or omission claim, such a claim still fails as a matter of law because the Complaint establishes that the County had a legitimate reason for placing Peters in a suicide prevention cell (the condition complained of)—namely, Peters made blatantly suicidal comments to the County Jail staff.

Lastly, Plaintiffs' state law negligence claims for wrongful death and survivorship are barred by governmental immunity, and they fail to allege any facts involving the use of tangible personal or real property sufficient to invoke waiver of immunity under the Texas Tort Claims Act ("TTCA").

As fully briefed below, Plaintiffs' Complaint warrants dismissal on multiple grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, the County Defendants respectfully request that the Court grant their Motion to Dismiss.

## II.   FACTUAL BACKGROUND

### A.   Factual Background as Provided in the Complaint[1]

On October 12, 2019, Peters was driving in San Leon, Texas, when his truck battery died.[2] During a wellness check, Peters was picked up on by unknown officers based on a warrant for his arrest due to failure to appear in court for an alleged false report to a peace officer charge.[3] Prior to the officers' arrival, Peters suffered an injury to his head due to striking his head on the vehicle.[4] Peters had visible abrasions to the right side of his face and bruising to his right eye.[5] However, Peters declined to go to the hospital.[6]

Peters was taken to the Galveston County Jail.[7] During the intake process, Peters reported his regular use of alcohol and tremors.[8] He suffered from alcohol withdrawal and

---

[1] Although the County Defendants deny almost all of Plaintiffs' allegations, the factual allegations in their Complaint are taken as true for purposes of this Motion only.
[2] Pls.' (Corrected) Second Amended Compl., Dkt. No. 54, ¶ 4.
[3] *Id.* at ¶ 10.
[4] *Id.* at 3 (paragraph not numbered).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

was started on "withdrawal protocol."[9]

After Peters was booked into the Galveston County Jail, there was an altercation with Corporal Matthew McInnis ("Corporal McInnis"). Responding to a call for another inmate, Peters exited the holding cell and would not return.[10] A "scuffle" took place,[11] which resulted in an assault on Corporal McInnis[12] and a hematoma and bleeding on Peters' head.[13] During the "scuffle," Peters said "shoot me. I've been trying to die for five (5) years."[14] Following this incident, Peters was placed in a full suicide prevention cell, known as an "FSP" cell.[15]

On October 17, 2019, Peters was observed snoring in his FSP cell.[16] A short time later, he was found unresponsive.[17] Medical staff responded to Peters and found that he had no pulse.[18] Medical staff began life-saving measures.[19] Emergency medical services was called and arrived in about five (5) minutes.[20] Emergency medical services eventually obtained a pulse.[21]

Peters was taken to University Texas Medical Branch.[22] Peters was assessed as having cardiogenic shock and acute hypoxic respiratory failure.[23] He was intubated and

---

[9] *Id.*
[10] *See id.* at 4 (paragraph not numbered).
[11] *Id.* at ¶ 12.
[12] *Id.*
[13] *Id.* at 4 (paragraph not numbered).
[14] *Id.*
[15] *Id.*
[16] *Id.* at 5 (paragraph not numbered).
[17] *Id.* at 5 (paragraph not numbered), ¶ 12.
[18] *Id.* at 5 (paragraph not numbered).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 5 (paragraph not numbered), ¶ 16.
[23] *Id.* at 5 (paragraph not numbered).

placed on a ventilator.[24]  Peters was placed in the intensive care unit and ultimately passed away four (4) days later on October 21, 2019.[25]

## B.   Procedural History

On September 21, 2021, Plaintiffs filed their Original Complaint.[26]  One month later, on October 21, 2021, Plaintiffs filed their First Amended Complaint.[27]

The County Defendants agreed to waive service, and their responsive pleading was due on January 14, 2022.  On that date, and pursuant to the Galveston District Court Rule of Practice 6, the County Defendants filed a letter directed to Plaintiffs discussing the various grounds the County Defendants contend the claims against them are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).[28]

In response to the County Defendants' letter, Plaintiffs filed the instant Complaint.[29]  However, Plaintiffs' Complaint did not address any of the issues raised in the County Defendants' letter.  The County Defendants now timely file this Motion to Dismiss.[30]

### III.   ARGUMENTS & AUTHORITIES

## A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual

---

[24] *Id.*
[25] *Id.* at ¶ 18.
[26] Dkt. No. 1.
[27] Dkt. No. 27.
[28] Dkt. No. 31.
[29] Dkt. No. 54.
[30] On March 7, 2022, the Court granted the County Defendants an extension to file their responsive pleading by March 23, 2022.  Dkt. No. 57.

allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

However, the complaint must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (modification in original). The complaint "must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal citations omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* at 421 (internal citations omitted).

**B.** **Plaintiffs' *Monell* Claim Based on the Eighth Amendment Fails as a Matter of Law Because the Eighth Amendment is Not Applicable to Pretrial Detainees Like Peters**

Plaintiffs' Count One asserts a *Monell* claim against the County solely based on the Eighth Amendment.[31]  However, the Eighth Amendment is only applicable to convicted prisoners, not pretrial detainees like Peters.  "Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Hare v. City of Corinth*, 74 F.3d 663, 639 (5th Cir. 1996). "The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment," while "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.*

Plaintiffs do not contest that Peters was a pretrial detainee.[32]  Accordingly, this *Monell* claim, and any other claims based on the Eighth Amendment, are subject to dismissal.

**C.** **The Failure to Train and Supervise Claim is Raised Against Sheriff Trochesset in His Official Capacity, and, Thus is Duplicative of the Claim Against the County and Subject to Dismissal**

The Supreme Court of the United States has stated that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).  Here, as stated in Plaintiffs' Complaint, Sheriff Trochesset is

---

[31]  Pls.' (Corrected) Second Amended Compl., ¶ 118.

[32]  *Id.* at ¶ 11.

sued in his official capacity.  Also, as noted above, the County is a defendant in this lawsuit and has appeared through the undersigned counsel.  In such circumstances, dismissal of the redundant official capacity claims against the official is appropriate.  *See, e.g., Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015) (affirming dismissal of Sheriff in his official capacity where County is also a defendant); *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 828 (S.D. Tex. 2012) ("[W]ith respect to Plaintiff's official capacity claims against Chief McClelland, the Court finds that these claims should be dismissed as they are simply another way of pleading against the City, which is already a party to this action.").  Plaintiffs' failure to train and supervise claim against Sheriff Trochesset in his official capacity is redundant of the claim made against the County and is subject to dismissal as a matter of law.

**D.**     **Plaintiffs' Failure to Train and Supervise Claim Against the County Fails as a Matter of Law Because There are No Specific Allegations That Sheriff Trochesset Failed to Train or Supervise Jail Staff or Had Actual Knowledge of Any Alleged Deficient Training or Supervision and There are No Allegations Establishing Deliberate Indifference**

Under Section 1983, supervisory officials cannot be held liable for the actions of subordinates on any theory of vicarious or *respondeat superior* liability.  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  When the plaintiff alleges "a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and

(3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

Deliberate indifference is a stringent standard of fault which requires proof that a municipal official disregarded a known or obvious consequence of his actions. *Id.* at 381–82.  "'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id*. at 381 (quoting *Smith*, 158 F.3d at 912).  "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").

Here, Plaintiffs fail to satisfy the first and third elements of their claim.  First, there is no connection between the alleged violations of Peters' constitutional rights and the actions of Sheriff Trochesset—the only supervisor identified in Plaintiffs' Complaint. Plaintiffs have not plead that Sheriff Trochesset had actual knowledge of the medical treatment provided to Peters, much less Peters' incarceration at the time.  There are also no allegations regarding what training Sheriff Trochesset provided or failed to provide. Furthermore, there are no allegations to establish the existence of prior failures in supervision or training of which Sheriff Trochesset had actual knowledge or that any such

failures were known to violate inmates' constitutional rights.  This cause of action is simply conclusory, and, therefore, subject to dismissal.

Additionally, there are no allegations of a pattern of constitutionally deficient training and supervision of the County Jail staff.  In fact, there are no allegations about the specific training or supervision provided at the County Jail—only vague statements that the same are inadequate.[33]  Furthermore, the list of other alleged custodial deaths at the County Jail are inconsequential to this claim.  None of the descriptions of those other alleged incidents contain any allegations about inadequate training or supervision.  For this independent reason as well, this claim is subject to dismissal.

**E.      There is No "Extreme Factual Scenario" Supporting a *Monell* Claim Based on Ratification Against the County**

Ratification is not a standalone cause of action.  Instead, it is one (1) of several "distinct theories of *Monell* liability."  *Pinder v. Skero*, No. 4:16-cv-03479, 2017 WL 11612501, at *8 (S.D. Tex. Sept. 6, 2017) (citing *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 864 (S.D. Tex. 2014)).  To the extent that Plaintiffs are asserting ratification as a cause of action separate from *Monell* liability, it would be subject to dismissal.

Additionally, a *Monell* cause of action based on ratification would also be subject to dismissal.  "[T]he Fifth Circuit has limited the theory of ratification to 'extreme factual scenarios.'"  *Green v. City of Texas City*, No. 3:20-cv-250, 2021 WL 4533269, at *2 (S.D. Tex. Sept. 23, 2021) (quoting *Worldwide Street Preachers Fellowship v. Town of*

---

[33] *See id.* at ¶¶ 134–39.

*Columbia*, 59 F.3d 747, 755 (5th Cir. 2009)).  "In other words, courts rarely find ratification." *Id.*

> **"Policymakers who 'simply go along with' a subordinate's decision do not thereby vest final policymaking authority in the subordinate, nor does a 'mere failure to investigate the basis of a subordinate's discretionary decisions' amount to such a delegation**.  Such limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance.  Policymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates.

*Id.* (quoting *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004)) (emphasis added).

Plaintiffs' theory of ratification is based solely on the allegation that "nothing was done [by Sheriff Trochesset] to remedy the medical complaints or the visible injuries [of Peters]."[34]  The fact that Sheriff Trochesset did not discipline any of the County Jail staff involved in Peters' incarceration is insufficient to establish *Monell* liability under a theory of ratification.

## F.    Plaintiffs Unsuccessfully Attempt to Fit Their Episodic Act or Omission Claim into a Condition of Confinement Claim

Instead of pleading a Fourteenth Amendment episodic act or omission claim against the County, which requires them to satisfy the high burden of deliberate indifference, Plaintiffs attempt to plead a condition of confinement claim based on the County's alleged failure to provide adequate medical treatment to Peters.  However, because Plaintiffs cannot prove a constitutional violation without first proving that a County employee acted in a manner to deprive Peters of his constitutional rights, Plaintiffs' claims fall squarely

---

[34] *Id.* at ¶ 132.

within an episodic act or omission framework, not a condition of confinement claim.

"A 'condition of confinement' case is a constitutional attack on 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644). This category includes "such claims as 'where a detainee complains of the number of bunks in a cell or his television or mail privileges." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)). In contrast, "[i]n an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott*, 114 F.3d at 53.

Here, just as in *Olabisiomotosho*, *Flores*, and *Scott*, the actual harm of which Plaintiffs complain is the County's alleged failure to provide Peters with adequate medical treatment. Thus, on its face, Plaintiffs' Complaint is about alleged omissions perpetrated by County actors interposed between Peters and the County. *See Olabisiomotosho*, 185 F.3d at 526 (ruling plaintiff did not raise a condition of confinement claim because her complaint turned on the officers' alleged failure to take better care of her, medically screen her, and secure treatment for her); *Flores*, 124 F.3d at 738 (holding plaintiffs did not successfully plead a condition of confinement claim in jail suicide matter despite their allegations that the county's training and staffing policies were inadequate); *Scott*, 114 F.3d at 53 (holding that, even though the plaintiff asserted under-staffing caused her injury, her

actual complained-of harm was sexual assault, an episodic act).  Plaintiffs' attempt to fit

their allegations in a condition of confinement claim by pointing to County policies or

alleged failure to train is ineffective because their claims are still unequivocally based on

alleged omissions by individuals.  *See Anderson v. Dallas Cty. Tex.*, 286 F. App'x 850, 859

(5th Cir. 2008) ("Because the plaintiffs cannot prove that [detainee who committed suicide]

was subjected to cruel and unusual punishment without first proving that a state actor

deprived him of his constitutional rights, the plaintiffs' case is an episodic-act-or-omission

case.").  Accordingly, Plaintiffs do not adequately plead a condition of confinement claim,

and such claim is subject to dismissal as a matter of law.

## G.      Even if the Plaintiffs Properly Plead a Condition of Confinement Claim, It Still Fails as a Matter of Law Because the County Had a Legitimate Reason for Placing Peters in the FSP Cell

Even if Plaintiffs adequately plead a condition of confinement claim (which is

denied), such claim would still be subject to dismissal because Plaintiffs cannot satisfy all

the required elements of this claim.  As mentioned above, a "'condition of confinement'

case is a constitutional attack on 'general conditions, practices, rules, or restrictions of

pretrial confinement.'"  *Flores*, 124 F.3d at 738.  Moreover, to constitute a constitutional

violation, the condition must be "'arbitrary or purposeless' or, put differently, 'not

reasonably related to a legitimate goal.'"  *Shepard v. Dallas Cty.*, 591 F.3d 445, 452 (5th

Cir. 2009) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).  Specifically, to establish a

condition of confinement claim, Plaintiffs must show: "(1) a rule or restriction or . . . the

existence of an identifiable intended condition or practice . . . [or] that the jail official's

acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights." *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 468 (5th Cir. 2015).

Here, the condition of which Plaintiffs complain is Peters placement in an FSP cell, a suicide prevention cell.[35]  However, Plaintiffs' Complaint demonstrates that the County had a legitimate reason for placing Peters in such a cell—he made suicidal comments to the County Jail staff.  Specifically, Peters said, "shoot me.  I've been trying to die for five (5) years."[36]  Such comments warranted the County Jail staff immediately placing Peters on suicide watch and in a suicide prevention cell for his own protection.  Plaintiffs readily admit that "Peters was specifically placed in FSP on suicide prevention watch and [*sic*] because he was perceived to be harmful [to] himself."[37]  The Plaintiffs also admit that FSP cells were designed for "suicide prevention" and for those "perceived of being a harm to themselves."[38]  Plaintiffs own Complaint clearly establishes the reasonably legitimate goal for the County's placement of Peters in an FSP cell.  Accordingly, this claim, if adequately pled, is subject to dismissal as a matter of law.

## H.   Plaintiffs' State Law Claims are Barred by the Texas Tort Claims Act

Plaintiffs' state law negligence claims for wrongful death and survivorship are subject to dismissal because they are barred by governmental immunity, and the TTCA has

---

[35] *Id.* at ¶ 152.
[36] *Id.* at 4 (paragraph not numbered).
[37] *Id.*
[38] *Id.*

not waived immunity for these claims. The TTCA provides only a limited waiver of immunity. *Univ. of Tex. Med. Branch v. Kai Hui Qi*, 402 S.W.3d 374, 380 (Tex. App.— Houston [14th Dist.] 2013, no pet.). Subsection 101.021(2) of the TTCA waives immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."[39] TEX. CIV. PRAC. & REM. CODE § 101.021(2). Plaintiffs fail to plead facts sufficient to show a waiver of immunity under this Subsection. In fact, courts generally find that there is no waiver of immunity under for Chapter 71 wrongful death and survivorship claims. *See Boyd v. City of River Oaks, Tex*., Nos. 4:13-CV-443-A, 4:13-CV-511-A, 2014 WL 201704, at *6 (N.D. Tex. Jan. 16, 2014) (collecting cases for the proposition that "[o]ther courts to consider the issue have failed to find waiver of immunity as to claims under Chapter 71").

### 1.     Plaintiffs have not pled any facts showing use of tangible personal or real property that caused or contributed to Peters' death.

Plaintiffs do not claim—nor can they—that any acts by the County Defendants involved the use of tangible personal or real property sufficient to waive immunity under Subsection 101.021(2). "Tangible property is property that is capable of being handled, touched, or seen." *Holland v. City of Houston*, 41 F. Supp. 2d 678, 711 (S.D. Tex. 1999). To state a claim under this Subsection, a plaintiff must allege "(1) that the property was used or misused by a governmental employee acting within the scope of his or her

---

[39] The TTCA also contains a waiver of immunity for certain claims involving motor-driven vehicles or motor-driven equipment, which is clearly inapplicable here. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1).

employment and (2) that the use or misuse of the property was a contributing factor to the injury." *Id.* "'Use' is defined as 'to put or to bring into action or service; to employ for or apply to give a purpose.'" *Kai Hui Qi*, 402 S.W.3d at 381 (quoting *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)).

Here, Plaintiffs allege the County Defendants breached their duty to "provide [Peters] medical care and treatment in the Galveston Jail."[40]  Nothing in the Complaint implicates the use of any tangible personal or real property that caused or contributed to Peters' death.

Where, as here, no tangible personal or real property is involved, "claims 'asserting a failure to identify [the plaintiff's] medical condition, a failure to render proper medical care, a failure to train, control and supervise, and improper police procedures are not waived by the TTCA; therefore, these negligence allegations are barred by sovereign immunity.'" *Holland*, 41 F. Supp. 2d at 711. (quoting *Riggs v. City of Pearland*, 177 F.R.D. 395, 406 (S.D. Tex. 1997)) (dismissing negligence claims because they did not involve the use of tangible personal or real property and thus "d[id] not fall within the scope of the TTCA"); *see also Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009) (affirming dismissal of negligence claims against county and ruling "failure to train or supervise is not a proper cause of action under the TTCA.") (citing *Tex. Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).  As with the cases above, Plaintiffs' allegations do not describe the use of tangible personal or real property as a cause or contributing factor to

---

[40]  Pls.' (Corrected) Second Amended Compl., ¶ 157.

Peters' death, and, therefore, the County Defendants' immunity is not waived.  As such, dismissal is proper.  *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 459–60 (Tex. App.—Tyler 1999, pet. denied) (dismissing inmate's negligence in failing to provide medical treatment claim where petition failed to allege facts on showing the use of tangible personal or real property or premises defect).

### 2. Plaintiffs have not alleged a premises defect claim.

Regarding real property under Subsection 101.021(2), Plaintiffs also fail to invoke waiver of immunity because they have not alleged a premises defect.  A claim involving real property may come within the meaning of the TTCA if the plaintiff sufficiently alleges a premises defect claim.  *Nunez v. City of Samsom Park*, 197 S.W.3d 837, 842–43 (Tex. App.—Fort Worth 2006, no pet.).[41]  "The term 'premises' has been defined as a building or part thereof with its grounds and appurtenances." *Id.*  "'Defect' has been defined as a shortcoming, an imperfection, or the want of something necessary for completeness." *Id.* at 843.

Here, Plaintiffs have not brought a premises defect claim because they have not alleged any shortcomings or imperfections of the County Jail.  *See id.* (affirming that

---

[41] There is disagreement among Texas appellate courts whether real property can be negligently "used" within the meaning of the TTCA, or if the claim involving real property must be a premises defect claim in order for immunity to be waived. *Compare Vela v. City of McAllen*, 894 S.W.2d 836 (Tex. App.—Corpus Christi 1995, no writ) (holding that the "use" of a booking room and placement of a stool therein was equivalent to the "use" of personal property); *City of Waco v. Hester*, 805 S.W.2d 807 (Tex. App.—Waco 1990, writ denied) (holding that a room in which the plaintiff was assaulted and a television that the guards watched were "used" within the meaning of the TTCA), *with Nunez*, 197 S.W. 3d at 842 ("Neither a cause of action for negligent use of real property nor a cause of action involving a condition of real property exists separate and apart from a cause of action for a premises defect."); *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 672 (Tex. App.—Eastland 1998, pet. denied) ("To the extent that *Vela* and *Hester* can be understood to state that a room is personalty or that a cause of action will lie for the negligent use of real property, we respectfully decline to follow our sister courts.  The duty of a real property owner with regard to others is defined as a premises defect.").  The Court need not decide this issue here because Nichols fails to plead allegations to support either theory for waiver of immunity.

appellants failed to establish waiver of immunity under the TTCA where there were no allegations regarding a premises defect); *Denson*, 63 S.W.3d at 459–60 (same).  Therefore, for this reason as well, the County's immunity has not been waived, and Plaintiffs' negligence claims fail as a matter of law.

3.      **The Texas Tort Claims Act's waiver of immunity does not apply to failure to act claims.**

Furthermore, Plaintiffs' negligence claims for wrongful death and survivorship fail as a matter of law because the real substance of those claims is the County Defendants' alleged *failure to act*, or the *non-use* of property, and, thus, Subsection 101.021(2) is inapplicable.  *See Kai Hui Qi*, 402 S.W.3d at 389.  "In determining whether sovereign immunity has been waived, courts look to the real substance of a plaintiff's cause of action, not the plaintiff's characterization of her claims."  *Id.*  In looking at the "real substance" of the alleged claim, "a state entity's failure to act does not invoke the Tort Claims Act's limited waiver of immunity."  *Id.* (holding failure to timely diagnose plaintiff did not invoke waiver of immunity); *see also Miller*, 51 S.W.3d at 587–88 (holding that surviving spouse "in essence, alleged only the non-use of tangible personal property" to medically treat decedent, and thus, failed to demonstrate waiver of immunity under the TTCA); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (holding failure to provide medication did not trigger waiver of immunity); *Univ. of Tex. Med. Branch v. Thompson*, No. 14–06–00014–CV, 2006 WL 1675401, at *4 (Tex. App.—Houston [14th Dist.] June 20, 2006, no

pet.) (mem. op.) (holding that failure to timely and properly diagnose and treat Thompson did not waive immunity).

Here, Plaintiffs' negligence claims for wrongful death and survivorship are based on the County Defendants' alleged failure to act—allegedly failing to provide Peters with adequate medical care.  Because case law makes clear that the failure to act does not constitute a waiver of immunity under the TTCA, dismissal of Plaintiffs' negligence claims is proper for this independent reason as well.

## IV.   PRAYER

Based on the foregoing, the County Defendants pray the Court grant this Motion to Dismiss and order that all of Plaintiffs' claims against them be dismissed with prejudice. The County Defendants also pray that the Court grant such other and further relief to which they are justly entitled.

Respectfully submitted,

**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
Federal I.D. No. 18830
**Carmen Jo Rejda-Ponce – Of Counsel**
State Bar No. 24079149
Federal I.D. No. 1366666
**GERMER PLLC**
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
(713) 650-1313 – Telephone
(713) 739-7420 – Facsimile

**COUNSEL FOR THE COUNTY DEFENDANTS,
GALVESTON COUNTY AND
SHERIFF HENRY TROCHESSET**

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of March, 2022, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record pursuant to the Federal Rules of Civil Procedure.

**Carmen Jo Rejda-Ponce**