UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| Estate of Jeffrey L. Peters and Jaryd Peters, Individually and as Representative of Estate of Jeffrey L. Peters<br><br>  *Plaintiffs*,<br><br>v.<br><br>Galveston County, et al.<br><br>  *Defendants*. | §§§§§§§§§§§§ Civil No. 3:21-CV-00256 |

**MOTION TO DISMISS OF DEFENDANT DR. ERIN BARNHART, M.D.**

Defendant Dr. Erin Barnhart, M.D. files this Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint, which was filed March 4, 2022 (Dkt. #54), pursuant to the extension granted by this Court for the filing. (Dkt. #64).

 **1. Summary of the Motion**

 1.1 Despite opportunities to amend, and the benefit of communications required by the Court's Special Requirement for Motions to Dismiss under Rule 12(b) (Brown Rule 6), Plaintiffs continue to stand on the Corrected Second Amended Complaint ("Cmp.") as a sufficient pleading against Defendant Dr. Barnhart in both her individual and official capacities. Because that pleading is defective, and redundant of claims asserted by Plaintiffs against Defendant Galveston County, Dr. Barnhart moves to dismiss under Rule 12(b)(6). Plaintiffs has failed to allege sufficient, specific facts as to Defendant Dr. Barnhart to establish a right to recovery against her in an individual capacity, or to

overcome her qualified immunity from suit. Further, even assuming all facts alleged in the amended complaint are true, Plaintiffs have no right to relief based on such facts against Defendant Dr. Barnhart in an official capacity. Defendant Dr. Barnhart requests this Court dismiss the complaint. (Dkt. #54).

**2. A statement of the issues to be ruled on by the Court and the standard of review.**

*Issues Presented:*

2.1 Whether Plaintiffs' Corrected Second Amended Complaint states a claim against Defendant Dr. Barnhart in her individual capacity (Cmp. at 2).

2.2 Whether Plaintiffs' Corrected Second Amended Complaint states a claim against Defendant Dr. Barnhart under the Fourth Amendment (Cmp. at 2) for an alleged unreasonable seizure and resulting injury.

2.3 Whether Plaintiffs' Corrected Second Amended Complaint states a claim under the Fifth Amendment (Cmp. at 2).

2.4 Whether Plaintiffs, based on pretrial detention, may assert a claim under the Eighth Amendment. (Cmp. at 2).

2.5 Whether Plaintiffs' Corrected Second Amended Complaint states a claim against Defendant Dr. Barnhart as to which she would not have qualified immunity.

2.6 Whether Defendant Dr. Barnhart is entitled to any dismissal of state law wrongful death and survivorship claims pursuant to the Texas Tort Claims Act. (Cmp. at 2).

*Standard of Review:*

2.7 Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. A Rule 12(b)(6) motion is proper when the defendant contends the complaint in question fails to state a legally cognizable claim. In determining whether to grant the motion, the Court must accept the factual allegations of the pleading as true, viewing them in a light most favorable to Plaintiffs, and making all reasonable inferences in their favor. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

2.8 The complaint at page three, under the heading "Nature of the Case," alleges a set of facts arising from the pretrial arrest and detention of Jeffrey Lynn Peters by "officers." The initial statement is that the date of "treatment" is October 17, 2019.[1] Plaintiffs assert Mr. Peters was arrested and detained at the Galveston County jail on October 12, 2019 and that an altercation with one of the officers at the jail, Defendant

---

[1] It is unclear to this defendant if "treatment" means arrest and detention, or medical care for the later described seizure in jail.

3

McInnis, on an unknown date caused additional injury. (Cmp. at 4, 8). Plaintiffs allege Mr. Peters was placed on suicide watch but not medically monitored, and that while in his jail cell may have suffered a seizure. (Cmp. at 5). On October 17, deputies or jailers found Mr. Peters unresponsive, so EMS was dispatched, and Mr. Peters transported to UTMB. There he was evaluated and determined to have had cardiogenic shock. (Cmp. at 5, 9). After alleging at course of consult at UTMB, Plaintiffs says Mr. Peters died "in Galveston County jail's custody" on October 21.[2] (Cmp. at 6, 18).

2.9 None of these events of arrest, pretrial detention, and medical care (either at the jail or at UTMB) involve Dr. Barnhart. But beginning at Cmp. at 6, Plaintiffs allege that Dr. Barnhart, "the assigned Galveston County Medical Examiner" "acting in her official capacity" has not released the unredacted official autopsy report of Mr. Peters's death. (Cmp. at 7). Plaintiffs assert several reasons why the report has not been released and note that no criminal charges have been filed in connection with Mr. Peters's death.

2.10 At paragraph 28, Cmp. at 11, Plaintiffs allege that various defendants, including Dr. Barnhart, violated Mr. Peters's Fourth, Eighth, and Fourteenth Amendment rights

> to be free from cruel and unusual punishment
> to receive proper medical care
> to receive adequate medical care
> to receive equal protection and due process

---

[2] It is unclear to this defendant if Plaintiffs mean Mr. Peters remained in "custody" of the County while at UTMB. At paragraph 18, Cmp. at 9, Plaintiffs allege Mr. Peters died while at intensive care at UTMB.

"while incarcerated and under the care, custody and control of Galveston County, at the Galveston County Jail under the supervision and control of Galveston County, the Galveston County Sheriff, Galveston County Corpal [sic] McInnis and Galveston County Jail's Contracted Medical Providers, Soluta Health and Boone Chapman."

2.11  At paragraph 37, Cmp. 14, Plaintiffs allege Dr. Barnhart was acting in her official capacity; "directly participated" in "misconduct"; and conspired with unnamed defendants to commit unconstitutional conduct while under color of law. In paragraph 38, Plaintiffs add that Dr. Barnhart directly participated in the underlying events by refusing to provide an unredacted autopsy report and, by the same refusal she sanctioned, approved, or consented to the conduct of the Galveston County officers, jailers, and deputies.

2.12  At paragraph 108, Cmp. 31, Plaintiffs allege "Galveston County" has a practice of withholding medical records, autopsy reports and "basic information" about inmate deaths.

2.13 At paragraph 110, Cmp. 31, Plaintiffs allege Dr. Barnhart continues to withhold an "official signed unredacted" autopsy report "either by choice or at the direction of the former Galveston County Sheriff or the District Attorney." Plaintiffs then set out certain state law provisions in the Texas Code of Criminal Procedure regarding certificates of death and any autopsies kept by the medical examiner. Plaintiffs add a series of alleged communication with the medical examiner's office, its public information officer, and the

5

Galveston County District Attorney. (Paragraph 112, Cmp. 32-35.) There is also a vague reference to an order of Judge Hughes, an order for deposition and pre-suit production, and some production by Dr. Barnhart's unnamed "counsel." (Id. at 35.)

2.14 At paragraph 113, Cmp. 35, Plaintiffs allege Dr. Barnhart is "the policymaker for the medical examiner's office and promulgated the policy of withholding the autopsy reports of individuals that have died after entering the Galveston Jail or released to the hospital to the jail."

2.15 At paragraph 117, Cmp. 35, Plaintiffs allege generally as to all defendants that harm resulted from malice and their "deliberate indifference" to Mr. Peters's constitutional rights.[3] A stray sentence says defendants acted jointly and severally "causing the death."

2.16  At paragraph 120, Cmp. 36, Plaintiffs allege in a conclusory way that Dr. Barnhart violated Mr. Peters's Fourth and Fourteenth Amendment rights.

2.17 At paragraph 124, Cmp. 37, Plaintiffs allege "the policy of Dr. Barnhart, the Sheriff, and Galveston County caused injury to Mr. Peters and deprived him of his constitutional rights.

2.18 At "V. Claims", Cmp. 38, Plaintiffs set out the following counts:

---

[3] Such an allegation would usually support a theory of punitive damages against defendants in their individual capacity. *E.g., Smith v. Wade,* 461 U.S. 30, 56 (1983).

Galveston County liability "under *Monell*" as actionable under the Eighth Amendment including, at Cmp. 39, Dr. Barnhart's "agreement" not to release the autopsy report (Count One)

Supervisor liability against other defendants (Count Two)

Galveston County's ratification of the acts of the Sheriff, a nurse, and a physician ("Dr. Beach") (Count Three)

Galveston County liability for failure to train officers and jailers (Count Four)

Denial or delay by certain defendants of medical care (Count Five)

Harm to Mr. Peters from the "conditions of confinement" at the Galveston County jail (Count Six)

Wrongful Death and Survivor action against "each Defendant" or against certain named defendants but not Dr. Barnhart (Count Seven)

Violations of the Fourth, Eighth, and Fourteenth Amendments for unreasonable search and seizure and excessive deadly force against officers, deputies, and jailers (Count Eight)

Medical negligence and health care liability claims against other defendants (Count Nine).

2.19 At paragraph 169, Cmp. 50, Plaintiffs seek recovery of punitive damages "against each individually-named defendant in their individual capacities." But at paragraph 171, the request for punitive damages is made against certain listed defendants only, and not Dr. Barnhart.

2.20 At paragraph 173, Cmp. 50, Plaintiffs seek recovery of compensatory general damages against "each Defendant, jointly and severally." The allegation is repeated in paragraph 189, Cmp. 53.

### 3. Summary of the Argument

3.1  Plaintiffs suing public officials under section 1983 must file a short and plain pleading that is factual and not conclusive. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). Plaintiffs' Corrected Second Amended Complaint – with more than 200 paragraphs[4] – has alleged some facts as to Defendant Dr. Barnhart. But those facts that are set out in the pleading do not support a plausible, non-conclusory claim against Dr. Barnhart under the theories of liability broadly asserted elsewhere. And considering the various Counts set out in the amended complaint, the only potentially applicable Count as to Dr. Barnhart is Count One, asserting liability of Galveston County.[5] As to that claim, suing Dr. Barnhart in an official capacity is duplicative of an action against the County which Plaintiffs allege she serves as an agent. For that reason alone, she is entitled to dismissal.

3.2  Additionally, the amended complaint sends a mixed message about the fundamental nature of the allegations against Dr. Barnhart,[6] as there are a few references

---

[4] The amended complaint has unnumbered paragraphs; it then has 127 numbered paragraphs; it then restarts the numbering at 118 (Cmp. at 38) and skips from 120 to 128 ((Cmp. at 41). The numbering continues to 169 (Cmp. at 48), then jumps back to 165, (Cmp. at 49) and ends with paragraph 193. (Cmp. at 53).

[5] Paragraph 118 at Cmp. 38 appears, however, to limit Count One to Eighth Amendment claims. As noted elsewhere in this motion, that amendment does not apply to a pre-trial detainee.

[6] "The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the [government]." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).

to individual lability, and joint liability, and liability for punitive damages, while the caption of the case identifies Dr. Barnhart "in her Official capacity." If Dr. Barnhart is sued in her individual capacity and Plaintiffs want to hold her personally liable under section 1983 because she, acting under state law, allegedly caused the deprivation of a federal right, then Dr. Barnhart would be entitled to assert the defense of qualified immunity. Here, no effort has been made to allege a claim that would survive review under the qualified immunity doctrine, in which the conduct of each individual defendant is assessed separately. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

3.3 Accordingly, since Plaintiffs have amended twice already and were given an opportunity to amend again before this motion was filed, all claims against Dr. Barnhart should be dismissed with prejudice to refiling.

### 4. Argument and Authorities

4.1 Dr. Barnhart is identified in the Corrected Second Amended Complaint as a "policymaker for the Galveston County Medical Examiner's office." The Galveston County Medical Examiner's office is not named as a defendant, and Dr. Barnhart does not concede that the office could be a proper party defendant as a governmental entity or an appropriate governing body. Dr. Barnhart submits the Medical Examiner's office has no jural existence separate and apart from Galveston County.

4.2 Nor does she agree she would be a "final policymaker" of such an office as a matter of law, or fact. An employee, agency, or board of a governmental entity is not a

policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency, or board and cannot review the action or decision of the employee, agency, or board. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915 (1988). Plaintiffs' Corrected Second Amended Complaint has no well-pleaded allegations to show Dr. Barnhart would be any entity's final policymaker, which is a question of law for this Court. *E.g., Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292 (1986) (plurality opinion); *McMillian v. Monroe County*, 520 U.S. 781, 786 , 117 S. Ct. 1734 (1997).

### A. Dismissal of official capacity claims as redundant.

4.3 But if the Court determined that Dr. Barnhart was proper a defendant to official capacity claims, she would still be entitled to dismissal since Galveston County is already a party to the suit. Federal district courts in Texas "have uniformly held official-capacity claims should be dismissed as duplicative and redundant where the government entity for which the individual serves is also named as a defendant." *Miraflor v. City of Missouri City*, CA No. 4:20-cv-01054, 2021 U.S. Dist. LEXIS 163489, *5-6 (S.D. Tex. Aug. 30, 2021) citing *League of United Latin American Citizens v. Texas,* 2015 U.S. Dist. LEXIS 69514, 2015 WL 3464082, *2 (W.D. Tex.); *see also Kentucky v. Graham,* 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all other respects other than name, to be treated as a suit against the entity.")

4.4 Beyond that basis for dismissal, and consistent with the standard of review, Plaintiffs have alleged Dr. Barnhart is the chief medical examiner for the examiner's office and she "promulgated the policy of withholding the autopsy reports of individuals that have died after entering the Galveston Jail or released to the hospital to the jail." Plaintiffs do not allege anything further in support of this claim, such as how it is actionable under section 1983 or what specific constitutional right is violated, except to claim that "the cause of death" was "concealed until about the expiration of the two year statute of limitations." (Cmp. 35.) Elsewhere in the amended complaint, Plaintiffs do claim that if the medical examiner provided a redacted autopsy report that "condones" violations or "impedes discovery of constitutional violations."

### B. No viable Section 1983 claims in any capacity.

4.5 To defeat this motion to dismiss, Plaintiffs must have pleaded "enough facts to state a claim to relief that is plausible on its face" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4.6 There are two essential elements to a section 1983 claims. First, the conduct in question must be committed by a person acting under color of state law. Second, the conduct must deprive the claimant of a right secured by the Constitution or the laws of the United States. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

4.7  Plaintiffs asserts violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. These alleged constitutional violations must then be tied to the facts supporting facially plausible claims. Within that framework, some of Plaintiffs' theories can be quickly addressed. First, Plaintiffs' claims of unreasonable seizure and excessive force under the Fourth Amendment cannot apply to Dr. Barnhart, as she is not alleged to have been involved in any arrest, pretrial detention, or medical care in the Galveston County jail or at UTMB. So that claim fails against Dr. Barnhart.

4.8 Next, there is a single casual reference to the Fifth Amendment in the complaint. (Cmp. 2.) The Fifth Amendment only applies to actions of the federal government, not state or local actors. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Since it is alleged Dr. Barnhart is the county medical examiner and not a federal governmental actor, any section 1983 claim for a Fifth Amendment violation fails too.

4.9 As to the Eighth Amendment, its protection against cruel and unusual punishment is applicable only to convicted prisoners. *See Ingraham v. Wright*, 430 U.S. 651, 670 (1977); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Plaintiffs allege that Mr. Peters was a "pre-trial detainee," not a convicted prisoner. (Paragraph 11, Cmp. 8.) Thus, the Eighth Amendment claim is likewise subject to dismissal.

4.10 That leaves the Fourteenth Amendment claim. Plaintiffs allege due process and equal protection violations while Mr. Peters was detained ("incarcerated," see Cmp. 11) and during care and custody at the Galveston County jail. Again, the amended complaint

does not allege Dr. Barnhart had any interactions with Mr. Peters during arrest, detention, and with respect to medical care provided or allegedly not provided at jail or UTMB. The amended complaint thus does not state a claim against Dr. Barnhart for any due process or equal protection violations arising from Mr. Peter's arrest or detention. Elsewhere in the amended complaint, Plaintiffs allege Dr. Barnhart and other defendants violated Mr. Peters's Fourth and Fourteenth Amendment rights. (Paragraph 120, Cmp. 36.). If Plaintiffs are trying to link the two amendments, this is not necessary or appropriate. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against … physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Therefore, the Fourth Amendment would apply to Plaintiffs' seizure and excessive force claims, not the Fourteenth Amendment (which arrest and excessive force are not factually supported as to Dr. Barnhart).

### C. No actionable state law claims.

4.11 There is another reference to the Fourteenth Amendment and due process in the amended complaint at Paragraph 31, Cmp. 12-13 where, setting out the identities of the parties, Plaintiff Jaryd Peters alleges a Fourteenth Amendment due process claim "for interference with familial relations, state law survivor's action and wrongful-death action as the heir and survivor of Mr. Peters." But none of these are actionable under the

Fourteenth Amendment. As to the state law claims under the Texas Tort Claims Act, or the Texas Wrongful Death Act, Plaintiffs have invoked supplemental jurisdiction under 28 U.S.C. § 1367. Whether or not the pleadings are sufficient to assert state law claims is a determination to be made for other defendants, *see* Dkt. #61 at 4 (Galveston County and the Sheriff's Motion to Dismiss), since it is undisputed on these pleadings that Dr. Barnhart had no personal involvement with Mr. Peters; indeed, there is even a statement in the amended complaint that Dr. Barnhart did not perform the autopsy of Mr. Peters. (Cmp. 7.)

4.12 If Plaintiffs were trying to assert state law claims against Dr. Barnhart, they would be subject to the Texas Tort Claims Act and, for that reason, Dr. Barnhart would be entitled to dismissal. Specifically, Plaintiffs have not alleged a negligent or wrongful act or omission of Dr. Barnhart acting within the scope of her employment, where the negligent conduct involves "some condition or some use of tangible personal property under circumstances where there would be private liability." *Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 33 (Tex. 1983); Tex. Civ. Prac. & Rem. Code § 101.021(2).

### D. No actionable claims related to the autopsy report.

4.13 Finally, if the amended petition sought to assert some type of procedural due process Fourteenth Amendment claim, the Court would have a dual inquiry. First, it would consider whether Plaintiffs were deprived of a protected property interest. And if so, the Court next determines whether the deprivation was accomplished without

adherence to due process minimums. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S. Ct. 1148 (1982). Plaintiffs have not established a property right in the disclosure of a medical examiner's report; but if the Court were to assume one existed, the due process minimum is met if the government has relied on an exception to disclosure of a medical examiner's report under the Tex. Gov't Code § 552.301, as Plaintiffs themselves allege. (Cmp. 34).

    4.14 The amended complaint has two other claims related to the autopsy report. First, that the non-production of the unredacted report after events constitutes "direct participation" in the underlying events of arrest, detention, and medical treatment concerning Mr. Peters. This conclusion of the pleader is simply not logical. Second, Plaintiffs allege that the refusal to provide an autopsy report either sanctions conduct, or knowingly consents to it. Ratification or approval or consent in the section 1983 context is relevant in the official policymaking theory of liability; there is no vicarious liability or respondent superior theories. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Thus, a policy or custom becomes official only when it results from the decision or acquiescence of the officer or governmental body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Further, "a plaintiff must establish that the policy was the moving force behind the violation."

4.15 Plaintiffs allege that the policy of not releasing an autopsy is some ratification or consent as to the underlying content; but they cannot show there is a "direct causal link" between the policy and the alleged constitutional violations. Notably, Fifth Circuit precedent has limited the theory of ratification by policymakers to "extreme factual situations." *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). Thus, a policymaker who defends subordinates later found to have broken the law has not ratified the illegal conduct and it is not assumed to have resulted from an official policy. *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986). Here, opining or documenting a cause of death in an autopsy, whether redacted or unredacted, is not such an extreme situation that it supports a theory of ratification of conduct.

### E. No qualified immunity allegations sufficient to survive dismissal.

4.16 Finally, if the Court were to read the amended complaint as including a claim of individual liability, the complaint is subject to dismissal. It does not allege a basis from which the Court could conclude Dr. Barnhart would not be shielded from suit and alleged damages by the doctrine of qualified immunity. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009). Reviewing courts will not deny qualified immunity unless existing precedent puts the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011). And qualified immunity questions should be resolved at the earliest possible stage of the suit. *Porter v. Epps*, 659

F.3d 440, 445 (5th Cir. 2011). Therefore, when a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). The plaintiff must do so by establishing that the official's allegedly wrongful conduct violated clearly established law. *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).

4.17 Under *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), the Court considers this question as to the quality of the Plaintiffs' Corrected Second Amended Complaint:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right?
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.

*Id.* at 2156. Dismissal of the claim against Dr. Barnhart is required under this test. Plaintiffs' complaint fails to allege any constitutional violation that is actionable against Dr. Barnhart. The qualified immunity defense would therefore remain intact and guide the Court to grant this motion on that basis as well.

### 5. Conclusion and the relief sought.

For all these reasons, Defendant Dr. Erin Barnhart, M.D. requests the Court grant this Motion to Dismiss under Rule 12(b)(6) as to the claims against her in Plaintiffs' Corrected Second Amended Complaint.

Respectfully submitted,

FELDMAN & FELDMAN P.C.

By: */s/ George W. Vie III*
    George W. Vie III
S.D. Tex. No. 12402
State Bar No. 20579310
3355 W. Alabama St., Suite 1220
Houston, TX 77098
713.986.9471
*george.vie@feldman.law*

Attorneys for Defendant
Dr. Erin Barnhart, M.D.

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that service on counsel for all parties will be accomplished through CM/ECF.

*/s/ George W. Vie III*