**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| ESTATE OF JEFFERY L. PETERS | § | |
| AND JARYD PETERS, | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF ESTATE | § | |
| OF JEFFERY L. PETERS, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-00256 |
| | § | JURY DEMANDED |
| GALVESTON COUNTY, SHERIFF | § | |
| HENRY TROCHESSET, in his | § | |
| individual capacity, BOON | § | |
| CHAPMAN BENEFIT | § | |
| ADMINISTRATORS INC., SOLUTA, | § | |
| INC., SOLUTA HEALTH, INC., | § | |
| CHIEF MEDICAL EXAMINER, | § | |
| ERIN BARNHART in her individual | § | |
| capacity and Officer MCINNIS in his | § | |
| individual capacity, | § | |
| Defendants. | | |

**ESTATE OF JEFFREY PETERS RESPONSE TO SHERIFF HENRY**
**TROCHESSET AND GALVESTON COUNTY'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Jaryd Peters, et al. (herein "Plaintiffs") file this their Response to
Defendant's Galveston County and Sheriff Trochesset Motion to Dismiss the Second
Amended Complaint [Dkt. 61] and in support thereof, would respectfully show the
following:

## INTRODUCTION

Mr. Peters was an engineer and a  loving father. He found himself in need of regrouping and fell upon difficult times after the sale of his business. He had been in a battle with alcoholism after the sale of his business.  In the booking at Galveston County Jail Mr. Peters was in a scuffle with an officer and he suffered injuries that went untreated. ( Dkt. 54, p.8)  Mr. Peters was forced to detox cold turkey while placed in a solitary  unsanitary  jail  cell  in  Galveston  County.   Four  days  later  he  was  found unresponsive in a jail cell.  Mr. Jeffery Peters died soon after  at UTMB.

Plaintiffs filed their lawsuit on September 21, 2021. Defendants Galveston County and  Trochesset  were  served  with  Request  for  waiver  of  service  and  appeared  and answered.

Plaintiffs amended their lawsuit and filed the Live Complaint, Second Amended Corrected  Complaint.  [Dkt  54].  Defendants  Galveston  County  and  Sheriff  Trochessett filed their Motion to Dismiss the Live Complaint. [Dkt. 61].

## TABLE OF CONTENTS

**INTRODUCTION** 2

**TABLE OF CONTENTS** 2

**TABLE OF AUTHORITIES** 3

**OBJECTION TO DEFENDANTS' RECITATION OF THE FACTS** 4

**SUMMARY OF PLAINTIFFS' ARGUMENTS**     **4**

Plaintiffs asserted plausible facts to support claims against each defendant in their Live Complaint, therefore, *Ashcroft v. Iqbal and Bell Atlantic v. Twombly* provide that a motion to dismiss must not be granted     4

**ARGUMENTS AND AUTHORITIES**     **4**

A complaint is only required to contain a "short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure Rule 8.     6

Elements necessary to establish liability under 42 U.S.C. Section 1983, *Monell Claim* Based on the Eighth through the Fourteenth Amendment.     7

Facts support Plaintiffs' civil rights claims under 42 U.S.C. Section 1983 and preclude the granting of Defendants' motion to dismiss     9

Plaintiffs also set forth numerous policies of which Galveston County and Sheriff Trochesset were aware and followed, all of which contributed to or caused Peters's death.     10

Galveston County has a history of denial and delaying medical care in the jail although it's those in its custody have exhibited the need for adequate medical care for serious medical needs. The deaths have occurred based on a policy of prioritizing profits over lives     10

The Failure to Train and Supervise Claim is Raised Against Sheriff Trochesset in His Official Capacity, and, Thus is Duplicative of the Claim Against the County and Subject to Dismissal     10

Plaintiffs sufficiently pled fact to support their claims that Sheriff Trochesset Failed to Train or Supervise Jail Staff and had Actual Knowledge of Any Alleged Deficient Training or Supervision     11

Defendants erroneously state there is a requirement of an "Extreme Factual Scenario" Supporting a *Monell Claim* Based on Ratification Against the County     11

Plaintiffs Condition of Confinement Claim the County Had no a Legitimate Reason for Placing Peters in the FSP Cell     12

Plaintiffs are not alleging any State Law Causes of Actions other than the Survival and Wrongful Death statutes that are available in 42 USC 1983 claims.     13

**PRAYER**     **15**

**T**

## OBJECTION TO DEFENDANTS' RECITATION OF THE FACTS

Plaintiff objects to any facts within the Motion to Dismiss that have not been provided in the Complaint [Dkt. 54].

## SUMMARY OF PLAINTIFFS' ARGUMENTS

**I.** ***Plainti*ffs asserted plausible facts to support claims against each defendant in their Live Complaint, therefore, *Ashcroft v. Iqbal and Bell Atlantic v. Twombly* provide that a motion to dismiss must not be granted**

### A. *Monell* Claims are not subject to Heightened Pleading Standard

There is no requirement to pled more than a short plain statement in this case since the *heightened pleading standard does not apply to claims* asserted against Sheriff Trochesset and Galveston County, an actor in their official capacity or a municipality. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-46 (S.D. Tex. 2011)

Peters, here, need not plead the relevant policy or widespread practice in exhaustive detail. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-46 (S.D. Tex. 2011) (explaining that **"only minimal factual allegations should be required at the motion to dismiss stage."**). Nor is  Peters subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct.

1160, 122 L. Ed. 2d 517 (1993) (**holding that *Monell* claims are not subject to a heightened pleading standard).** However, the bare requirements of **notice pleading** under Rule 8 of the Federal Rules of Civil Procedure require that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... *cannot be conclusory; it must contain specific facts.*" *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) (citation omitted) (emphasis added). Moreover, in light of *Iqbal* and *Twombly*, *Maze* must plead sufficient facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—that the pleader is entitled to relief.'").

To satisfy this standard, a plaintiff must, at a minimum, identify the relevant policy, custom or practice that was the motivating force for the alleged constitutional violation. *See Bd. of the Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("... we have required a plaintiff seeking to impose liability on a municipality under section 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.")

Defendants, Galveston County and Sheriff Henry Trochesset seek to hold Peters to the inpremissable heightened pleading standard and not the legally required notice pleading standard under Rule 8. The notice pleading standard is less stringent.  Peters, here, has described the policy, or widespread practice in exhaustive detail and its relationship to the underlying constitutional violation(s).(See, Dkt. 54, page 4,). The policy and practice violated  in Peters included failing to medically monitor him every 15 minutes in accordance with the Galveston County Jail Standard operating procedures and the relationship to the underlying constitutional violation was by failing to medically monitor Mr. Peters the snoring[1] sound, which likely was him suffering a seizure went unchecked and he was later found unresponsive in his jail cell at 2:15 pm without any medical documentation of what happened to Mr. Peters from the hours between 6:30 AM and 2:15 Prm. (See Dkt. 54, page 5).

More  importantly when Deputy Campos found Mr. Peters unresponsive (not breathing and with no pulse) he is required  to administer CPR.  When a deputy discovers an inmate who appears to be unconscious-any deputy or staff member certified in CPR is required to enter the area and begin CPR in the absence of pulse or breathing. The deputy will continue to administer treatment until relieved by Medical personnel.  Campos instead of administering CPR waited during these critical minutes upon the arrival of

---

[1] Mr. Peters has never been a person who snores

medical personnel. Campos never tried to perform CPR as required by GCJ Standard Operating procedures. Another policy and procedure violation. These important minutes were critically important, the lack of oxygen to the brain, for the survival and injury to Mr. Peters. He coded.( Dkt. 54, p. 5). Neurology concluded his injuries were due to seizure-like activity, most likely due  to anoxic brain damage and CT reflex segmental pulmonary embolism.  He died as a result of his injuries on October 21, 2019.

The plaintiff's allegations must provide *fair notice* to the defendant with respect to the specific policies or customs that are being challenged. *Id.* at 844. For example, **"allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy**." *Id.* (footnotes omitted) In *Thomas*, the court concluded that the plaintiff's "lengthy" allegations did not satisfy this pleading standard because they "consist[ed] only of a list of number of broadly-defined constitutional violations (for example, 'excessive force' and 'unlawful searches and seizures') followed by the assertion that there was a pattern of such violations, that there was a failure to train, or that the violations resulted from improper hiring." *Id.* at 845.

## ARGUMENTS AND AUTHORITIES

### a. *Standard of Review*

To State a claim under 42 U.S.C. Section 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or of federal law, and (2) that the violation was committed by someone acting under color of state law". The Court should construe Plaintiff's factual allegations in the light most favorable thereto. "If the factual allegations in plaintiff's second amended complaint are sufficient to show their right to relief is plausible and above mere speculation, the court should deny Defendant's motion. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The court accepts as true all allegations in the plaintiffs' complaint and all reasonable inferences are to be drawn in favor of the plaintiff's claims. A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone.' See *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985) (citation omitted). Thus, a deadly force complaint under § 1983 brought by a free citizen must be analyzed according to Fourth Amendment standards. See *Stroik v. Ponseti*, 35 F.3d 155, 157 (5th Cir.1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *Reese v. Anderson*, 926 F.2d 494, 500 (5th Cir. 1991); *Drain v. Galveston County*, 999 F.Supp. 929, 933 (S.D.Tex.1998).

It is only in individual capacity § 1983 suits that the Fifth Circuit applies a heightened pleading standard, which requires Plaintiff to plead facts with particularity, focusing specifically on the conduct of the individual who caused the injury. See *Elliot v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985); *Batiste v. Layrisson*, CIV.A. 04-0607, 2005 WL 840468, at *3 (E.D. La. Apr. 1, 2005). The court must accept all well-pleaded facts in the complaint as true. *Kaiser Aluminum*

& *Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).

**b.    A complaint is only required to contain a "short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure Rule 8.**

The instant motion to dismiss Galveston County and Sheriff Henry Trochesset as to Plaintiffs' Second Amended Complaint must be denied because the allegations contained therein are far more than threadbare allegations and state plausible claims for relief. See *Ashcroft v. Iqbal,* 556 U.S. 662, 670-79 (2009) (approving *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)) holding that "detailed factual allegations" are not required—only that the complaint contains a "short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure 8). See Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court must liberally construe the allegations in favor of Plaintiffs; all facts pleaded in the complaint must be taken as true. See *Iqbal*, 556 U.S. at 670-79 (2009) (citing *Twombly*, 550 U.S. at 678)). A motion to dismiss must be decided wholly on the allegations in Plaintiffs' live complaint and not on Defendants' characterization of the allegations. See Fed. Rule Civ. P. 12(d).

A claim has facial plausibility and survives a motion to dismiss when the content alleged allows the court to draw a reasonable inference that the defendant is liable for the

misconduct. *Iqbal*, 556 U.S. at 678, 681-83. The Supreme Court has reaffirmed that "[s]pecific facts are not necessary" . . . [T]he [Complaint] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89 (2007). In their Motion to Dismiss, neither County nor Sheriff Trochesstt dispute the plausible factual allegations—they merely attempt to recast and grossly distort the allegations or state their conclusion that Plaintiffs' claims fail.

*c.* **Elements necessary to establish liability under 42 U.S.C. section 1983, *Monell Claim Based on the Eighth through the Fourteenth Amendment.***

Mr. Peters was a pre-trial detainee. Dkt. 54,page 8 The claims against the defendant are based upon the violations of due process under the Fourteenth Amendment. The Eight amendments require the government actors to provide adequate medical care and are applicable to the states and municipalities through the Fourteenth amendment.

One way to establish municipal liability under 42 U.S.C. section 1983 is that Plaintiffs must show that an official policy was promulgated by a policymaker and was the moving force of the violation of a constitutional right. Stated differently with reference to the instant facts, to defeat the motion to dismiss and allege plausible facts giving rise to liability, Plaintiffs must show that an official policy or policies—(cost-saving denial and delay of medical treatment of mental health issues),—was the moving force in Peters's death. "To be sure, 'official policy' often

refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans or action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati, et a*l, 475 U.S. 469, 481 (1986); see also *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The plaintiffs have done exactly what is required. Plaintiffs have alleged facts identifying a policymaker, a policy or custom, and a violation of Peters's constitutional rights, which resulted in his death, and which cause of death are the policies identified. See *Piotrowski*, 237 F.3d at 578. 10. Additionally, not only have Plaintiffs alleged policies (cost-saving denial and delay of medical treatment of mental health issues), but also a pattern and practice of Defendants being deliberately indifferent to carrying out these policies, which failure caused Peters's death. Defendants' brief characterization of *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) is improper. ( Dkt. 54, p. 17-18, 20, 21-30) Under *Monell*, Defendants are liable where a policy resulted in a deprivation of constitutional rights. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 691. Thus, where the facts involve "official policy as the moving force of the constitutional violation" the government is

responsible. *Monell*, 436 U.S. at 694. Defendants assert, incorrectly, that Plaintiffs have not met their *Monell b*urden because there were "no deaths after Mr. Peters " showing "pattern and practice that would put the policymaker on notice." The burden is whether Plaintiffs have alleged that the execution of official policy has inflicted injury. *Monell*, 436 U.S. at 694. Furthermore, Mr. Peters's death could have spurred a positive change, which is fine for the future but does not bear upon the damages to Plaintiffs.

As such, Plaintiffs have met their burden under *Monell a*nd to defeat Defendants' motion to dismiss as they have pleaded sufficient facts to state a claim to relief that is plausible on its face. This is borne out by Plaintiffs' allegations that Peters's death was a result of the policies identified in their Amended Complaint relating to the treatment of individuals experiencing anxiety, depression, and the proper medical care for serious medical needs, particularly those with mental health issues, and the general medical treatment of inmates housed in the Galveston County Jail.(Dkt. 54, page 21-32,).

### d.     Plaintiff sufficiently  pleadFacts support Plaintiffs' civil rights claims under 42 U.S.C. section 1983 and preclude the granting of Defendants' motion to dismiss

The four corners of the live complaint including the factual background  establishes a viable Section 1983 Claim against Galveston County and Sheriff Trochesset acting in his official capacity. ( Dkt. 54, p. 3-57)  Section 1983 requires that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable

42 U.S.C. 1983

Simply put, it is undisputed that Galveston County and Sheriff Trochessett acted under color of law as it relates to Jeffery Peters and the *Monell claim* is plausibly pled in the Second Amended Complaint. (Dkt. 54, p. 12-13) In addition, Jeffery Peters was deprived of his constitutional rights to adequate medical care while housed in the Galveston County Jail. ( Dkt. 54, 37-49) Jeffery Peters was deprived of his constitutional right  to  be free from excessive force,   he was deprived of his right to adequate medical care, emergent medical care but rather received either denial or  delayed  medical care for his serious medical needs with Galveston County and Sheriff Trochessett knowing the risks of delaying care.  As was the case with other inmates, Jesse C. Jacobs, Jerry Biggers Hill, Denise Pope and Cotton Ronald Different who have died in GC jail custody.  (Dkt. 54, 37-38)

In *Callegari v. Thomas*, 2006 U.S. Dist. LEXIS 85943 in response to Harris County's motion to dismiss, plaintiff argues that [t]o state a claim for violation of § 1983 due to the denial of adequate medical care, Plaintiff must show a deprivation

of rights secured by the constitution by a jail official acting under the color of state law where (1) the decedent "was exposed to a substantial risk of serious harm"; and (2) "jail officials acted or failed to act with deliberate indifference to that risk" by showing that the officials were "aware of the risk, yet consciously disregarded it".... In failure to train cases, such as this one, Plaintiff can show deliberate indifference alternatively by a showing that the actual "failure to train [in and of itself] reflects deliberate indifference to the constitutional rights" of detainees. Citing R*hyne v. Henderson County,* 973 F.2d 386 (5th Cir. 1992), plaintiff argues that Booker's right to receive reasonable medical treatment while in custody has been recognized by the Fifth Circuit as a constitutionally protected right, and that her allegations that unknown employees of Harris County Sheriff's Department acting under color of state law caused Booker's death by denying his requests for medical treatment are sufficient to state a claim for which relief may be granted.

In Peters, he has sufficiently pled (1) the decedent "was exposed to a substantial risk of serious harm"; and (2) "jail officials acted or failed to act with deliberate indifference to that risk" by showing that the officials were "aware of the risk, yet consciously disregarded it".... In failure to train cases, such as this one, Plaintiff can show deliberate indifference alternatively by a showing that the actual

"failure to train [in and of itself] reflects deliberate indifference to the constitutional rights" of detainees. ( Dkt. 54, p. 21-44) . Contrary to Galveston County and Sheriff Trochesett's assertions Peters has pled the decedent was exposed to a substantial risk of serious harm, jail officials acted or failed to act with deliberate indifference to that risk by showing that the officials were aware of the risk, yet conscisusly disregarded it. In addition it was pled that the actual failure to train reflects deliberate indifference to the constitutional right s of detainees. (Dkt. 54, p. 21-44)

Plaintiffs also set forth numerous policies of which Galveston County ("GC") and Sheriff Trochesset were aware and followed, all of which contributed to or caused Peters's death.

Plaintiffs have pled that:

- GC policy, practices and custom on medical monitoring inmates every 15 minutes (which GC has a pattern  and custom of  not following)(See, Dkt. 54, P. 38-46)
- GC policy, practices, custom  on administering CPR on unresponsive ( not breathing or no pulse) inmates which was not followed;
- GC policy, practices and custom on delaying to send  or transport inmates  to the Hospital when vitals or unstable,  ( Dkt. 54, P. 22);

- GC policy, practices and custom of refusing to transport inmates from the jail to the hospital and placing inmates in violent cells;

- GC policy of delaying treatment of inmates with serious medical needs, difficulty breathing,

- Failing to treat inmates suffering injuries knowing the risks

- Failing to transport inmates with serious emergency medical needs to a hospital sett as Mr. Peters experienced.

- Failing to discipline or train and supervise deputies allowing the untrained in deputes to complete a jail death Report to the State AG's office; not having the proper policien place to prevent the constitutional violations suffered by peters

- Failing to adequately investigate, punish, and discipline prior instances of misconduct, thus ratifying the conduct(See, Dkt. 54, P. 38-46)

- The county ratified each use of deadly force by its officers and jailers including Peters(See, Dkt. 54, P. 38-46)

- Sheriff Trochesset ratified its offices and jailers' conduct in nearly every case of use of deadly force or excessive force by its officers. (See, Dkt. 54, P. 38-46)

*e.      Galveston County has a history of denial and delaying medical care in the jail although its those in its custody have exhibited the need for adequate medical care for serious medical needs. The deaths have occurred based on a policy of prioritizing profits over lives*

The defendants have a vivid history of failing to provide adequate medical care to those in their custody, and have spelled out in similar factual scenarios. Second Amended complaint, pages 21-32, Plaintiff has provided this court with a litany of cases where Galveston County has deprived, denied, delayed and failed to provide adequate medical care to inmates from 2016 to 2020 and several unknown decedents:

- 

- **2013 Arthur Lee Linea**r was pronounced dead after GC policy or practice on refusing to send an inmate to the hospital when his vitals were unstable and he required emergent medical care.

- **2015, Jesse Clayton Jacobs- The defendants here** refused to send Jesse Jacobs to the hospital after his vitals were unstable and he required serious emergency medical care after depriving him of physician-prescribed and monitored Xanax prescriptions, resulting in delay in medical care and ultimately causing his untimely and  preventable death. Jesse was stripped of his clothing, nude,  and placed in solitary confinement every day after he suffered  seizures and was in his own feces and vomit. Jesse died a day later. He was placed on a 'detoxification protocol' that Plaintiffs allege was a dangerous wholesale denial of his prescribed

medication, and, as a direct result, he began to suffer serious withdrawal symptoms that went wholly untreated for a period of time. These symptoms included sleep-deprivation, elevated blood pressure, and a racing pulse, as well as 'profuse sweating, disorientation, delirium tremens, palpitations, nausea, panic, anxiety, vomiting, diarrhea, metabolic failure, renal failure, respiratory failure, shock, as well as other symptoms.' On his second day in custody, Jacobs was prescribed two medications without explanation, but he was never given a mental health screening or seen by a psychiatrist. After his fourth day in custody, on March 10, 2015, while experiencing diarrhea, heavy sweating, and delirium tremens, Jacobs [*7]  suffered a 'Grand Mal' seizure, despite having no prior history of seizures. Plaintiffs allege that Jacobs was given only water and Gatorade. The next day, he suffered another seizure and he bit through his tongue, causing 'heavy bleeding,' and he was severely disoriented. After this second seizure, Jacobs was placed in solitary confinement and his clothes were removed. Plaintiffs allege that the cell was a 'cement room with a raised concrete slab for sleeping, the room is without a toilet, sink, or shower, but only a drain in the cement floor of the room.' Jacobs continued thereafter to suffer additional seizures, but jail personnel did not note these symptoms on the required paperwork. Plaintiffs allege that Jacobs did not receive any treatment for these seizures, or his other serious symptoms, until his sixth day in custody. After his

third seizure, jail staff notified one of the jail physicians, but Plaintiffs allege that the physician did not even examine Jacobs in person. Instead, he was prescribed the medication Librium, but it either was not given to him or it had no effect. Plaintiffs allege that Jacobs was then "left alone, in solitary confinement, without physician, psychiatric, [*8] or medical supervision." Plaintiffs allege that Jacobs experienced a fourth seizure, which was documented by jail personnel, but 'no treatment to prevent future or active seizures' was administered. Finally, on his seventh day in custody, Jacobs was found on the floor of his solitary jail cell, 'unresponsive, drooling, without a pulse, surrounded by his own feces.' After a period of delay, jail medical staff "eventually" called 911 and began chest compressions. The emergency medical team performed CPR, and Jacobs was transported to the University of Texas-Medical Branch ("UTMB") hospital in Galveston, where he arrived "critically ill," with a "grim" prognosis. Jacobs died the next day. Although Sheriff Trochesset listed Jacobs' cause of death as 'natural causes,' the Galveston County Medical Examiner ultimately determined that Jacobs' cause of death was 'abrupt discontinuation of long term Alprazolam medication.' The Sheriff discouraged jail staff, including medical staff, from calling 911 in order to save money." *Jacobs v. Trochesset*, No. 3:16-CV-65, 2016 U.S. Dist. LEXIS 152111, at *6 (S.D. Tex. 2016).

- **Denise Pope**

On February 28, 2016, an unborn child of Denise Pope died. Ms. Pope's child died after she did not receive prenatal care, and began to hemorrhage for hours. She was given a blanket by the only medical person on duty, an LVN, to soak up the blood until a Sargent insisted the LVN order Ms. Pope's transport to the emergency room. Pope was required to experience undue pain and suffering and the loss of her child due to Galveston County's adopted policy from their Medical Contractor, Boon Chapman, and Soluta. Ms. Denise Pope's unborn child was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require Medical care, after the pregnant inmate complaining of initially spotting then heaving bleeding, resulting in a delay in medical care and ultimately causing her untimely preventable death of her unborn child.

There are other deaths of individuals that occurred after being held in custody who never came home from the jail or released from jail but died after being transported to the hospital and "released" meaning from jail oversight, prior to their deaths.

The individuals were only released after hospital admission, not only to save money paying for a guard at the hospital, and the medical bills, but primarily, when the prognosis is grim and they could avoid reporting yet another custodial death, and not so their family can visit because the sheriff has full discretion to allow extended visits to those in custody

as they suggest.

For example, Jorge Cortez never returned home after entering the Galveston jail waiting for transport to a rehabilitation center.

- **Jorge Cortez**

  On May 26, 2017, died when he complained of difficulty breathing and persistent complaints of severe pain. He was not transported to the hospital until four-liters of fluid collected in his lungs. He became increasingly ill suffering from a highly fatal form of cancer, although only in the early stages. After numerous pleas for help, submitting an estimated twenty written sick call requests for care, along with a medical care grievance submitted to Kathy White complaining that although he was going to a clinic the LVN, Terry Hanelane refused to get him the care he needed or get him to a person licensed to provide him with care for an examination. His written and verbal complaints about his need for medical care for his serious medical needs. He complained of difficulty breathing and persistent complaints of severe pain for over a week on one occasion without treatment by a physician or an exam, although he was too weak to eat or get out of bed. He was too weak to ambulate and needed a wheelchair. 82. He was transported to the hospital in need of an emergency procedure to rapidly alleviate four liters of fluid

from Cortez's lungs. 83. Cortez was "released" from Galveston jail custody after he was diagnosed with cancer and his prognosis was grim. They continued to check on his condition although he was "released." Mr. Cortez died on June 19, 2017. His death was not reported to the attorney general of Texas as a custodial death, although he never made it home from jail, and Galveston county maintained his personal property. There are likely other deaths that went unreported. Dkt. 54 ¶ ¶ 79-84

- **Barry Edward Phillips**

    **In November 2017 Barry Phillips complained of having difficulty breathing, but he was not sent out for emergency care** after complaining of breathing difficulties pursuant to GC's policy on refusing to send inmates to the hospital until the individual is in critical emergent need that require serious emergency medical care he was pronounced dead.

- **In 2017, Ms. Jerry Lousie Bigger** after complaining of breathing difficulties in GC's jail. The jail followed its policy or practice on refusing to send inmates to the The

- In March 2019 Cotton Glen Ronald, suffering from dehydration symptoms died in the GC Jail.

23

- **In 2020 Ariel Ledesma,** beaten and brutalized by officers banging his head to the wall. He was denied medical care after he suffered severe life-threatening injuries. He too was not transported to the hospital after he suffered severe life-threatening injuries until he became critical. Ledesma, like so many inmates, died.  Wunneburger, the jailer who beat Ledesma, was indicted for manslaughter in the death.

The nexus and common denominator between the above Galveston County Jail deaths and the death of Jeffery Peters are that each of the above individuals was deprived of adequate medical care for their serious medical needs, each individual received delayed medical care, and was not transported to the hospital after suffering severe medical injuries or conditions and like Peters they died when in many instances timely medical care could prevent the deaths. Jeffery Peters is similar in many respects to the treatment received by Ariel Ledsman where his head was banged against the wall and he was deprived of medical care and was not transported to the hospital until he became critically ill and unresponsive. (Dkt. 54, P. 26-27)

**Failure to Train and Supervise Claim is Raised Against Sheriff Trochesset  in His Official Capacity, and, Thus is Duplicative of the Claim Against the  County and Subject to Dismissal**

While a claim against Sheriff Trochesset in his official capacity is a claim against the County, liability resides on both due to the specific conduct of each.

*f.       Plaintiffs sufficiently pled fact to support their claims that Sheriff  Trochesset Failed to Train or Supervise Jail Staff and had Actual Knowledge of  Any Alleged Deficient Training or Supervision*

In response to Harris County's motion to dismiss, plaintiff argues that [t]o state a claim for violation of § 1983 due to the denial of adequate medical care, Plaintiff must show a deprivation of rights secured by the constitution by a jail official acting under the color of state law where (1) the decedent "was exposed to a substantial risk of serious harm"; and (2) "jail officials acted or failed to act with deliberate indifference to that risk" by showing that the officials were "aware of the risk, yet consciously disregarded it"…. In failure to train cases, such as this one, Plaintiff can show deliberate indifference alternatively by showing that the actual "failure to train [in and of itself] reflects deliberate indifference to the constitutional rights" of detainees. Citing *Rhyne v. Henderson County,* 973 F.2d 386 (5th Cir. 1992), plaintiff argues that Booker's right to receive reasonable medical treatment while in custody has been recognized by the Fifth Circuit as a constitutionally protected right and that her allegations that unknown employees of Harris County Sheriff's Department acting under color of state law caused Booker's death by denying his requests for medical treatment are sufficient to state a claim for which relief may be granted.

g.     *Defendants erroneously state there is a requirement of an "Extreme Factual Scenario" Supporting a Monell Claim Based on  Ratification Against the County*

An extreme factual scenario is only one avenue to show ratification, but it is not the sole avenue. It is pled that Sheriff Trochessett, the final policymaker for the administration of the jail adopted the deliberately indifferent unconstitutional practices in the jail by the contracted jail medical service employees to Boone Chapman, and Soluta Health. It is well settled that if a final policymaker adopts an unconstitutional practice it is evidence of ratification of said conduct. *Winslow v. Harris Cty.,* 2009 U.S. LEXIS 143825.

Further, allowing a jail officer such as Corporal McInnis, an officer trained and supervised by Trochessett  to strike the unarmed, non-threatening Peters in the head causing blunt force trauma to Peters   can be described as nothing more than extreme. See Dkt.54, p. 48)

"Ratification occurs 'when a subordinate's decision is subject to review by the municipality's authorized policymakers,' and 'the authorized policymakers approve the subordinate's decision and the basis for it.'" James v. Harris County, 508 F.Supp.2d. 535, 554 (S.D. Tex. 2007) (citing Praprotnik, 485 U.S. at 127). **"Ratification creates liability where 'a municipality's final policymakers are**

held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees.'" James, 508 F.Supp.2d. at 554 (citing Turner v. Upton County, 915 F.2d 133, 137 (5th Cir. 1990)).*Winslow v. Harris Cty.,* 2009 U.S. LEXIS 143825.

Here, unlike in the Aerial Ledesma case, Corporal McInnis was not criminally indicted for his conduct in beating the unarmed Peters who posed no immediate threat to the safety of the officer, did not resist arrest, and was not dangerous. ( Dkt. 54, p. 48)

**h.     *Plaintiffs Condition of Confinement Claim the County Had no a Legitimate Reason for  Placing Peters in the FSP Cell***

Defendants state that there was a legitimate governmental purpose for placing Mr. Peter's in FSP,  the "butt naked" cell since the pleading stated he expressed he wanted to die.

> "Here, the condition of which Plaintiffs complain is Peters placement in an FSP cell,  a suicide prevention cell.[35] However, Plaintiffs' Complaint demonstrates that the County  had a legitimate reason for placing Peters in such a cell—he made suicidal comments to  the County Jail staff. Specifically, Peters said, "shoot me. I've been trying to die for five  (5) years."[36] Such comments warranted the County Jail staff immediately placing Peters  on suicide watch and in a suicide prevention cell for his own protection. Plaintiffs readily  admit that "Peters was specifically placed in FSP on suicide prevention watch and because he was perceived to be harmful [to] himself."[37] The Plaintiffs also admit that FSP  cells were designed for "suicide prevention" and for those "perceived of being a harm to  themselves."[38] Plaintiffs [*sic*] own Complaint clearly establishes the reasonably legitimate goal for the County's placement of Peters in an FSP cell. Accordingly, this claim, if adequately  pled, is subject to dismissal as a matter of law." Dkt. 61 ¶

This interpretation is misguided. The defendants are seeking to show their failure to provide medical care should be excused by Mr. Peters' placement in the FSP cell; however, it is  the condition of the cell coupled with the failure to provide care, as pled, ( Dkt. 54, p.4-10, 20) that is the crux of the allegations for the conditions of confinement claim.  The Cell could

i.       ***Plaintiffs are not alleging any State Law Causes of Actions other than the Survival and Wrongful Death statutes that are available in 42 USC 1983 claims.***

Plaintiffs are not seeking claims under the Texas Tort Claim Act for negligence, regarding the negligent use of property, real property under Subsection 101.021(2) or do plaintiffs allege any premises defect in the complaint. Therefore the only issue for state law claims to be addressed are wrongful death and survival claims. The only state law claims asserted.

It is long established that so long as a Plaintiff has standing a person may bring a wrongful death and survival claims under 42 USC Section 1983. 42 USC Section 1988 incorporates the Texas wrongful death and survival statutes. See *Rodgers v. Lancaster Police & Fire Dept.,* 819 F.3d 205, 209 (5th Cir. 2016). Section 1988 states that state common law fills in the gaps in the administration of civil rights suits when federal law

fails to provide suitable remedies and punish offenses. See 42 U.S.C. § 1988; *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004).

Defendants inexplicably discuss state law immunity as it concerns Plaintiff's wrongful death and survival claims when Plaintiffs pleaded these claims as federal causes of action.

Such claims are properly brought on behalf of the estate but also the surviving family member's rights as well. *Id.*; see also, e.g., *Robinson v. Johnson,* 975 F. Supp. 950, 954 (S.D. Tex. 1996) ("The Fifth Circuit has held . . . that a parent may recover damages for "mental anguish, suffering and loss of companionship, contribution, society, affection and comfort" in a § 1983 action based on the violation of the parent's civil rights that resulted in his death. In assessing these claims, the federal court looks to the applicable state law— here the state law of Texas—for gap-filling as to who can bring the claims. *Rhyne*, 973 F.2d at 391. "The Texas Civil Practice and Remedies Code provides that only "the surviving spouse, children, and parents of the deceased" may bring an action to recover damages for wrongful death. *Dyer v. City of Mesquite, Texas,* 2017 WL 118811, at *13 (N.D. Tex. Jan. 12, 2017) (quoting TEX. CIV. PRAC. & REM. CODE § 71.004). Plaintiffs' claims here are proper. As in *Dyer*, Plaintiffs' claims are advanced on behalf of the Estate, and Jaryd Peters. Plaintiffs' allegations and evidence concerning both plaintiffs Baker meet the standard enunciated in the applicable cases (interpreting Texas,

as opposed to another state or circuit's law). See, e.g., *Robinson*, 975 F. Supp. at 954 ("In order to successfully maintain a claim for loss of parental consortium resulting from injury to the parent-child relationship, the plaintiff must show that the defendant physically injured the child's parent in a manner that would subject the defendant to liability. The child may recover for such non pecuniary damages as loss of the parent's love, affection, protection, emotional support, services, companionship, care, and society. (citation omitted)); *cf. Turk v. Mangum*, 268 F.Supp.3d 921, 932 (S.D. Tex. 2017) (discussing the applicable standards). In sum, there should be no doubt that Plaintiff—as the administrator of Mr. Peter's estate and in his own right—has "standing to bring survival and wrongful death actions under 42 U.S.C. § 1983." *King ex rel. Chaney v. Texas Med. Bd.*, 576 F. App'x 353, 354– 55 (5th Cir. 2014)). Defendants' conclusory argument, which cites the wrong area of law, should be ignored and the motion denied.

As a related matter, the foregoing also forecloses the county Defendants' argument that Plaintiffs are prevented from seeking damages under § 1983 under a wrongful death theory. Jaryd Peters individually is represented in this lawsuit. Here, as a case arising out of Texas and the Fifth Circuit, Fifth Circuit law, with gaps filled by Texas law, applies here. Under that established law, Plaintiff's wrongful death and survival claims can proceed under §1983. *Robinson*, 975 F. Supp. at 954.

Finally, for the reasons noted herein, Plaintiffs do not oppose that portion of the instant motion to dismiss for the other state law claims under the Texas Tort Claims Act (which Plaintiffs never asserted as to Galveston County).

## PRAYER

Plaintiffs respectfully request that this Court DENY the Motion to Dismiss the Second Amended Complaint (Dkt. 54) filed by Galveston County and Sheriff Trochessat in its entirety, or alternatively, should the Court have any question whether to grant the Motion to Dismiss in whole or in part, Plaintiffs respectfully request the opportunity to obtain additional discovery, including but not limited to taking depositions, an opportunity to repled and for such further relief as the Court may deem just and proper in law or in equity.

Law Offices of Debra Jennings

*/s/Debra V. Jennings*
Debra V. Jennings
Federal Bar No. 14373
6140 HWY 6, #269
Missouri City, Texas 77459
(713) 514-3034
(1832) 442-3700

The Lewis Law Group, PLLC

31

By: /s/ U.A. Lewis
U.A. Lewis
Federal Bar No. 1645666
SBN 24076511
P.O. Box 27353
Houston, TX 77227

## **CERTIFICATE OF SERVICE**

I certify that on the 26th day of April, 2022, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/*Debra V. Jennings*
Debra V. Jennings