IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ESTATE OF JEFFERY L. PETERS AND JARYD PETERS, INDIVIDUALLY AND AS REPRESENTATIVE OF ESTATE OF JEFFERY L. PETERS, Plaintiffs | § § § § § § § | |
| v. | § § | CIVIL ACTION NO. 3:21-cv-00256 JURY DEMANDED |
| GALVESTON COUNTY, SHERIFF HENRY TROCHESSET, in his individual capacity, BOON CHAPMAN BENEFIT ADMINISTRATORS INC., SOLUTA, INC., SOLUTA HEALTH, INC., CHIEF MEDICAL EXAMINER, Dr. Erin Barnhart in her individual capacity and Officer MCINNIS in his individual capacity, Defendants. | § § § § § § § § § § § | |

## ESTATE OF JEFFREY PETERS RESPONSE TO CHIEF MEDICAL EXAMINER, DR. ERIN BARNHART MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Jaryd Peters, et al. (herein "Plaintiffs") file this their Response to

Defendant, Dr. Erin Barnhart's Motion to Dismiss the Second Amended Complaint [Dkt.

65] and in support thereof, would respectfully show the following:

## I.    INTRODUCTION

Defendants were served and answered the claims by filing it is 12(b)6 Motion to

Dismiss.

# TABLE OF CONTENTS

INTRODUCTION **1**

TABLE OF CONTENTS **2**

TABLE OF AUTHORITIES **2**

OBJECTION TO DEFENDANTS' RECITATION OF THE FACTS **4**

SUMMARY OF PLAINTIFFS' ARGUMENTS **4**

Plaintiffs asserted plausible facts to support claims against each defendant in their Live Complaint, therefore, under Ashcroft v. Iqbal and Bell Atlantic v. Twombly a motion to dismiss must be denied 4

Sec. 11. Records 5

ARGUMENTS AND AUTHORITIES **6**

A complaint is only required to contain a "short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure Rule 8. 8

Elements necessary to establish liability under 42 U.S.C. section 1983, Fourteenth Amendment have been plead 11

Facts support Plaintiffs' civil rights claims under 42 U.S.C. section 1983 and preclude the granting of Defendants' motion to dismiss 14

The Failure to Train and Supervise Claim is Raised Against Dr. Barnhart 24

Plaintiffs also set forth facts to support a State Law claim for violation of the Texas Open Records Public Information Act against Dr. Barnhart. 24

Plaintiff is not seeking to recover from Barnhart for the death of Mr. Peters or claims under the Eighth Amendment. 25

PRAYER **26**

# TABLE OF AUTHORITIES

Cases                                                                      Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)…………………………………………………………………….. 10

*Batiste v. Layrisson*, CIV.A. 04-0607, 2005 WL 840468, at *3 (E.D. La. Apr. 1, 2005)……………………………………………………………………... 8

*Bd. of the Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)……………….………………….... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007)........................................................................ 10

*Butler v. State,* 872 S.W.2d 227, 238 (Tex. Crim. App. 1994)………………… 5

*Drain v. Galveston County*, 999 F.Supp. 929, 933 (S.D.Tex.1998)................... 8

*Elliot v. Perez,* 751 F.2d 1472, 1479 (5th Cir. 1985)......................................... 8

*Garcia v. Stat*e, 868 S.W.2d 337, 342 (Tex. Crim. App. 1993)……………….. 5

*Jackson v. Procunier,* 789 F.2d 307, 309 (5th Cir. 1986).................................. 7

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards,* Inc., 677 F.2d 1045, 1050 (5th Cir.1982)……………………….………………….……… 8

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)…………………. 9

*Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)................. 14,20

*Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2002)............................................. 7

*Pembaur v. City of Cincinnati, et a*l, 475 U.S. 469, 481 (1986)........................ 14,20

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).................... 14,20

*Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir. 1991)………………………… 8

*Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997)…. 9

*Stroik v. Ponseti*, 35 F.3d 155, 157 (5th Cir.1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995)...............................…………………... 8

*Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985)........ 8

*State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999)…………………………... 5

*Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-46 (S.D. Tex. 2011)……………….…………………………….…………………….……… 9

## OBJECTION TO DEFENDANTS' RECITATION OF THE FACTS

Plaintiff objects to any facts within the Motion to Dismiss that have not been provided in the Complaint.[Dkt. 54]

## SUMMARY OF PLAINTIFFS' ARGUMENTS

### I. *Plaintiffs asserted plausible facts to support claims against each defendant in their Live Complaint, therefore, under Ashcroft v. Iqbal and Bell Atlantic v. Twombly a motion to dismiss must be denied*

Generally, autopsy reports are admissible pursuant to the public record and business record exceptions to the hearsay rule. Tex. R. Evid. 803(6), (8); *Butler v. State,* 872 S.W.2d 227, 238 (Tex. Crim. App. 1994); *Garcia v. Stat*e, 868 S.W.2d 337, 342 (Tex. Crim. App. 1993). An autopsy report is provided by a medical examiner who holds a public office, See Tex. Code Crim. Proc. Ann. art. 49.25, § 1 (West Supp. 2005), with duties imposed by law related to the preparation and filing of a report stating the cause of

death. Id. art. 49.25, §§ 6, 9, 11; *Butler,* 872 S.W.2d at 237-38 (citing Tex. R. Evid. 803(8)(B)); *Garcia*, 868 S.W.2d at 340-42. Moreover, the autopsy report is subject to required public disclosure. Tex. Code Crim. Proc. Ann. art. 49.25, § 11 (West Supp. 2005).

The [autopsy] report sets forth matters observed pursuant to a duty imposed by law, including the location and the nature of the injuries. T*errazas v. State* App. LEXIS 66969, *13-15.

Dr. Erin Barnhart is responsible for each death report and autopsies in Galveston County. See, Texas Code of Criminal Procedure Art. 49.25:

**Sec. 11.    Records**

(a)  The medical examiner shall keep full and complete records properly indexed, giving the name if known of every person whose death is investigated, the place where the body was found, the date, the cause and manner of death, and shall issue a death certificate. The full report and detailed findings of the autopsy, if any, shall be a part of the record. Copies of all records shall promptly be delivered to the proper district, county, or criminal district attorney in any case where further investigation is advisable.   The records may not be withheld, subject to a discretionary exception under Chapter 552, Government Code, except that a photograph or x-ray of a body taken during an autopsy is excepted from required public disclosure in accordance with Chapter 552, Government Code, but is subject to disclosure:

(1)  under a subpoena or authority of other law;  or

(2)  if the photograph or x-ray is of the body of a person who died while in the custody of law enforcement.

(b)  Under the exception to public disclosure provided by Subsection (a), a governmental body as defined by Section 552.003, Government Code, may withhold a photograph or x-ray described by Subsection (a) without requesting a decision from the attorney general under Subchapter G  1, Chapter 552, Government Code.   This subsection does not affect the required disclosure of a photograph or x-ray under Subsection (a)(1) or (2).


## II.    ARGUMENTS AND AUTHORITIES

### Standard of Review

To State a claim under 42 U.S.C. Section 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or of federal law, and (2) that the violation was committed by someone acting under color of state law". The Court should construe Plaintiff's factual allegations in the light most favorable thereto. "If the factual allegations in plaintiff's second amended complaint are sufficient to show their right to relief is plausible and above mere speculation, the court should deny Defendant's motion. A claim has facial plausibility when the plaintiff pleads with factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The court accepts as true all allegations in the plaintiffs' complaint and all reasonable

inferences are to be drawn in favor of the plaintiff's claims. A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone.' See *Jackson v. Procunier,* 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2002). "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985) (citation omitted). Thus, a deadly force complaint under § 1983 brought by a free citizen must be analyzed according to Fourth Amendment standards. See *Stroik v. Ponseti*, 35 F.3d 155, 157 (5th Cir.1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir. 1991); *Drain v. Galveston County*, 999 F.Supp. 929, 933 (S.D.Tex.1998).

It is only in individual capacity § 1983 suits that the Fifth Circuit applies a heightened pleading standard, which requires Plaintiff to plead facts with particularity, focusing specifically on the conduct of the individual who caused the injury. See *Elliot v. Perez,* 751 F.2d 1472, 1479 (5th Cir. 1985); *Batiste v. Layrisson*, CIV.A. 04-0607, 2005 WL 840468, at *3 (E.D. La. Apr. 1, 2005). The court must accept all well-pleaded facts

in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).

**A.** ***A complaint is only required to contain a "short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure Rule 8.***

The asserted claims against Dr. Erin Barnhart are based on both her acting in her official capacity as a Medical Examiner for Galveston County and in Barnhart's individual capacity. For those claims based on Barnhart's conduct acting in her official capacity the *Monell v. Social Services*, 436 U.S. 658 (1978) standards apply. That is, the heightened pleading standard does not apply to claims against her in an official capacity, but rather notice pleading is required.

### *Monell* claims are not subject to Heightened Pleading Standard

There is no requirement to plead more than a short plain statement in this case since the *heightened pleading standard does not apply to claims* asserted against the Medical Examiner, Sheriff Trochesset, and Galveston County, an actor in their official capacity or a municipality. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-46 (S.D. Tex. 2011)

Peters, here, need not plead the relevant policy or widespread practice in exhaustive detail. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842-46 (S.D. Tex. 2011) (explaining that **"only minimal factual allegations should be required at the motion to dismiss stage."**). Nor is Peters subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct.

1160, 122 L. Ed. 2d 517 (1993) (**holding that *Monell* claims are not subject to a heightened pleading standard).** However, the bare requirements of **notice pleading** under Rule 8 of the Federal Rules of Civil Procedure require that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... *cannot be conclusory; it must contain specific facts*." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) (citation omitted) (emphasis added). Moreover, in light of *Iqbal* and *Twombly*, *Maze* must plead sufficient facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—that the pleader is entitled to relief.'").

To satisfy this standard, a plaintiff must, at a minimum, identify the relevant policy, custom or practice that was the motivating force for the alleged constitutional violation. *See Bd. of the Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("... we have required a plaintiff seeking to impose liability on a municipality under section 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.")

Defendants, Medical Examiner, Dr. Erin Barnhart, Galveston County, and Sheriff Henry Trochesset seek to hold Peters to the impermissible heightened pleading standard

and not the legally required notice pleading standard under Rule 8. The notice pleading standard is less stringent. Peters, here, has described the policy, or widespread practice in exhaustive detail and its relationship to the underlying constitutional violation(s).(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53). The policy and practice violated in Peters included failing and refusing to provide an autopsy report of the cause and manner of death, failing to provide the family with the cause and manner of Peters' death, failing and refusing to comply with the *Texas Public Information Act*, *HIPAA, Texas Administrative Code* and the *Texas Government Cod*e's requirement of an autopsy to the family and conspiring to deny autopsy within the two-year limitations for filing claims and the relationship to the underlying constitutional violations.

More importantly, Dr. Barnhart, as the medical examiner for the county, was required to report the cause of death to Galveston County Sheriff, who is required to report the cause of death in a custodial jail death report to the Texas Commission on Jail Standards and the Texas Attorney General's office. See, *Texas Administrative Code*, Title 37, Part 9, Chapter 269, 269.1 Subchapter A. Sheriff Trochesset reported to the media the cause of death was pending the autopsy. Today, the cause of death remains pending and no update or supplement to the custodial jail death report has been filed with the State.

The autopsy report provided by Dr. Erin Barnhart in her official capacity as the Chief Medical Examiner was a fully redacted document from corner to corner leaving only the identifying information the name of the decedent and his date of birth.

The plaintiff's allegations must provide *fair notice* to the defendant with respect to the specific policies or customs that are being challenged. *Id*. at 844. For example, **"allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy**." *Id.* (footnotes omitted) In *Thomas*, the court concluded that the plaintiff's "lengthy" allegations did not satisfy this pleading standard because they "consist[ed] only of a list of number of broadly-defined constitutional violations (for example, 'excessive force' and 'unlawful searches and seizures') followed by the assertion that there was a pattern of such violations, that there was a failure to train, or that the violations resulted from improper hiring." *Id*. at 845.

**B.    Elements necessary to establish liability under 42 U.S.C. section 1983, Fourteenth Amendment have been plead**

Mr. Peters was a pre-trial detainee. Dkt. 54,page 8 The claims against the defendant are based upon the violations of due process under the Fourteenth Amendment. The Eight amendments require the government actors to provide adequate medical care and are applicable to the states and municipalities through the Fourteenth amendment.

One way to establish municipal liability under 42 U.S.C. section 1983 is that Plaintiffs must show that an official policy was promulgated by a policymaker and was the moving force of the violation of a constitutional right. Stated differently with

reference to the instant facts, to defeat the motion to dismiss and allege plausible facts giving rise to liability, Plaintiffs must show that an official policy or policies—(cost-saving denial and delay of medical treatment of mental health issues),—was the moving force in Peters' death. "To be sure, 'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans or action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati, et a*l, 475 U.S. 469, 481 (1986); see also *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The plaintiffs have done exactly what is required. Plaintiffs have alleged facts identifying a policymaker, a policy or custom, and a violation of Peters' constitutional rights, which resulted in his death, and which cause of death are the policies identified. See *Piotrowski*, 237 F.3d at 578. 10. Additionally, not only have Plaintiffs alleged policies (cost-saving denial and delay of medical treatment of mental health issues), but also a pattern and practice of Defendants being deliberately indifferent to carrying out these policies, which failure caused Peters' death. Defendants' brief characterization of *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) is improper. ( Dkt. 54, p. 17-18, 20, 21-30) Under *Monell,* Defendants are liable where a policy resulted in a deprivation of constitutional rights. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is

responsible under § 1983." *Monell*, 436 U.S. at 691. Thus, where the facts involve "official policy as the moving force of the constitutional violation" the government is responsible. *Monell*, 436 U.S. at 694. Defendants assert, incorrectly, that Plaintiffs have not met their *Monell b*urden because there were "no deaths after Mr. Peters " showing "pattern and practice that would put the policymaker on notice." The burden is whether Plaintiffs have alleged that the execution of official policy has inflicted injury. *Monell*, 436 U.S. at 694. Furthermore, Mr. Peters' death could have spurred a positive change, which is fine for the future but does not bear upon the damages to Plaintiffs.

As such, Plaintiffs have met their burden under *Monell a*nd to defeat Defendants' motion to dismiss as they have pleaded sufficient facts to state a claim to relief that is plausible on its face. This is borne out by Plaintiffs' allegations that Peters' death was a result of the policies identified in their Amended Complaint relating to the treatment of individuals experiencing anxiety, depression, and the proper medical care for serious medical needs, particularly those with mental health issues, and the general medical treatment of inmates housed in the Galveston County Jail.(Dkt. *54,* pages 21-32,) and

(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53).

*C.*      *Facts support Plaintiffs' civil rights claims under 42 U.S.C. section 1983 and preclude the granting of Defendants' motion to dismiss*

Defendant Dr. Erin Barnhart is and was at all times relevant to this action the chief medical examiner for the Galveston County jail and a licensed physician acting in her official capacity and individual capacity.

According to the Texas Public Information Act, an autopsy report is public information and may be released to anyone who requests a copy unless there is an exception under the law. (See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53).

After almost two years of numerous requests, the appointed Galveston County Medical Examiner, Dr. Erin Barnhart, as a state actor acting in her official capacity under the color of law has never released the unredacted official autopsy report of Jeffrey Lynn Peters signed by the medical examiner to the grieving family of Jeffrey Lynn Peters. An autopsy report that identifies the manner and cause of the death of Mr. Jeffrey Peters. His sons required counseling, and mental and emotional treatment to cope with the death, and did not know the official cause and manner of their father's death from the medical examiner. The purported reasons given for the almost two-year refusal to release the unredacted autopsy report are: the records are not available, the matter is the subject of a criminal investigation by the Galveston County District Attorney's office, and the appointed Galveston County Medical Examiner, Dr. Erin Barnhart did not perform the autopsy report. (See, *Dkt. 54,* pages 14- 15, 31-36, 38-39 and 51-53).  No criminal charges, however, have ever been filed or charged against Officer McInnis or anyone due to the death of Mr. Peters.(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53).

Barnhart conspired, covered up, discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct while acting under the color of law. By refusing to provide the family of Mr. Peters with a copy of the unredacted autopsy report almost two years after their father's death. Barnhart directly participated in the misconduct by refusing to provide an autopsy report until on or about after the expiration of the limitation period with the cause of Mr. Peters' death.(See, *Dkt. 54,* page 6, 7, 9-10, 14-15, 31-36, 38-39 and 51-53). In addition, she discreetly sanctioned, cover-up, approved and knowingly consented to the unconstitutional conduct of the Galveston County Sheriff, jailers, and officers by agreeing and failing to issue an autopsy report to Mr. Peter's family to identify the manner and cause of his death. (See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53). Barnhart directly participated in the misconduct by refusing to provide an unredacted autopsy report until on or about after the expiration of limitation with the cause of Mr. Peters' death, in addition, she discreetly sanctioned, cover-up, approved and knowingly consented to the unconstitutional conduct of the Galveston County Sheriff, jailers, and officers by agreeing and failing to issue an autopsy report to Mr. Peter's family identifying the manner and cause of his death.(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53). The Chief Medical Examiner of Galveston County, Dr. Dr. Erin Barnhart, charged with the responsibility for the Galveston County autopsy, continues to withhold the official signed, unredacted autopsy either by choice or at the direction of the former Galveston County Sheriff or the District Attorney. [Dkt 54 ¶ 38]

Barnhart is responsible for each death report and autopsies in Galveston County. See, Texas Code of Criminal Procedure Art. 49.25: Sec. 11. Records (a) The medical examiner shall keep full and complete records properly indexed, giving the name if known of every person whose death is investigated, the place where the body was found, the date, the cause and manner of death, and shall issue a death certificate. The full report and detailed findings of the autopsy, if any, shall be a part of the record. Copies of all records shall promptly be delivered to the proper district, county, or criminal district attorney in any case where further investigation is advisable. The records may not be withheld, subject to a discretionary exception under Chapter 552, Government Code, except that a photograph or x-ray of a body taken during an autopsy is excepted from required public disclosure in accordance with Chapter 552, Government Code, but is subject to disclosure: (1) under a subpoena or authority of other law; or (2) if the photograph or x-ray is of the body of a person who died while in the custody of law enforcement. (b) Under the exception to public disclosure provided by Sub§ (a), a governmental body as defined by § 552.003, Government Code, may withhold a photograph or x-ray described by Sub§ (a) without requesting a decision from the attorney general under Subchapter G 1, Chapter 552, Government Code. This sub§ does not affect the required disclosure of a photograph or x-ray under Sub§ (a)(1) or (2). Efforts to obtain Autopsy, toxicology report, photographs, blood tissue samples, and related [Dkt. 54 ¶111]. Jaryd Peters requested a copy of his father's autopsy from the Galveston County Medical Examiner's Office and provided the required completed forms from the Medical examiners' website.(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53).

In November 2019, Jaryd Peters requested a copy of his father's autopsy report from the Medical Examiner. On November 20, 2019, Jaryd Peters received a letter from the Galveston County 2020 Medical Examiner stating:

"The ME office received your request for information seeking a post mortem exam report on Mr. Jeffrey Lynn Peters case number ME 01 2019 673. A copy of your request for information is enclosed. The ME Office does not have information responsive to your request, as the examination report is not yet in existence. In the event you continue to want a copy of the report, you will need to submit another request for information in the future. Please allow up to 60 days from the date of the exam to the completion of the report. Sincerely, Public Information Officer Medical Examiner's Office Galveston County."(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53).

In December 2019, Jaryd Peters made another request for a copy of his father's autopsy report, but on December 30, 2019, he received the same response from the Galveston County Medical Examiner:

 "The ME office received your request for information seeking a post mortem exam report on Mr. Jeffrey Lynn Peters case number ME 01 2019 673. A copy of your request for information is enclosed. The ME Office does not have information responsive to your request, as the examination report is not yet in existence. In the event you continue to

want a copy of the report, you will need to submit another request for information in the future. Please allow up to 60 days from the date of the exam to the completion of the report. Sincerely, Public Information Officer Medical Examiner's Office Galveston County."Mr. Peters was a pre-trial detainee. Dkt. 54, page 8 The claims against the defendant are based upon the violations of due process under the Fourteenth Amendment. The Eight amendments require the government actors to provide adequate medical care and are applicable to the states and municipalities through the Fourteenth amendment.

One way to establish municipal liability under 42 U.S.C. section 1983 is that Plaintiffs must show that an official policy was promulgated by a policymaker and was the moving force of the violation of a constitutional right. Stated differently with reference to the instant facts, to defeat the motion to dismiss and allege plausible facts giving rise to liability, Plaintiffs must show that an official policy or policies—(cost-saving denial and delay of medical treatment of mental health issues),—was the moving force in Peters' death. "To be sure, 'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans or action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati, et a*l, 475 U.S. 469, 481 (1986); see also *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The plaintiffs have done exactly what is required. Plaintiffs have alleged facts identifying a policymaker, a policy or custom, and a violation of Peters' constitutional

rights, which resulted in his death, and which cause of death are the policies identified. See *Piotrowski*, 237 F.3d at 578. 10. Additionally, not only have Plaintiffs alleged policies (cost-saving denial and delay of medical treatment of mental health issues), but also a pattern and practice of Defendants being deliberately indifferent to carrying out these policies, which failure caused Peters' death. Defendants' brief characterization of *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) is improper. ( Dkt. 54, p. 17-18, 20, 21-30) Under *Monell,* Defendants are liable where a policy resulted in a deprivation of constitutional rights. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 691. Thus, where the facts involve "official policy as the moving force of the constitutional violation" the government is responsible. *Monell*, 436 U.S. at 694. Defendants assert, incorrectly, that Plaintiffs have not met their *Monell b*urden because there were "no deaths after Mr. Peters " showing "pattern and practice that would put the policymaker on notice." The burden is whether Plaintiffs have alleged that the execution of official policy has inflicted injury. *Monell*, 436 U.S. at 694. Furthermore, Mr. Peters' death could have spurred a positive change, which is fine for the future but does not bear upon the damages to Plaintiffs.

As such, Plaintiffs have met their burden under *Monell a*nd to defeat Defendants' motion to dismiss as they have pleaded sufficient facts to state a claim to relief that is plausible on its face. This is borne out by Plaintiffs' allegations that Peters' death was a

result of the policies identified in their Amended Complaint relating to the treatment of individuals experiencing anxiety, depression, and the proper medical care for serious medical needs, particularly those with mental health issues, and the general medical treatment of inmates housed in the Galveston County Jail.(Dkt. 54, pages 21-32,).

On February 7, 2020, Jaryd Peters received a call that his father's autopsy report was ready from the Galveston County Medical Examiner's office, but Jaryd Peters would have to complete another form as his prior request had expired. ( Dkt. 54, page 34,35)

Jaryd Peters sought counsel assistance and made another attempt to request a copy of his father's autopsy that was hand-delivered to the Manager of the Galveston County Medical Examiner's office but still no autopsy report, photographs, or toxic screen was provided to counsel pursuant to open records and HIPAA[1].

Jaryd Peters was notified by the Galveston County District Attorney, Jack Roady, that because his father's death was under criminal investigation, no autopsy report will be provided and that a copy of the correspondence was sent to Galveston County Chief Medical Examiner Dr. Erin Barnhart. Roady never stated that the release of the autopsy

---

[1]Plaintiff as next of kin has a right of access to the submitted information pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d-1320d-8. At the direction of Congress, the Secretary of Health and Human Services ("HHS") promulgated regulations setting privacy standards for medical records, which HHS issued as the Federal Standards for Privacy of Individually Identifiable Health Information. See Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-2 (Supp. IV 1998) (historical & statutory note); Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. pts. 160, 164 ("Privacy Rule"). These standards govern the releasability of protected health information by a covered entity. See 45 C.F.R. pts. 160, 164.

report would result in an interference with the alleged criminal investigation, much less any details on how the release of Mr. Peters' autopsy to his children would interfere with the criminal investigation. Jaryd Peters' counsel filed a verified Petition under Rule 27 for pre-suit discovery on June 23, 2020, requesting the deposition of the Chief Medical Examiner. The court ordered the production of the witness for a deposition and the autopsy report, toxicological report, photographs, and preservation of the blood, tissue samples, and related samples. (See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53).

Despite autopsy reports being public records and requested under HIPAA, Dr. Erin Barnhart's Counsel produced a purported autopsy report with each 8 x 10 page completely redacted (blackened out with a box nearly the full size of the alleged autopsy report 6 X 8, the margins were unredacted) withheld and proclaimed this was a matter under criminal investigation. Dr. Barnhart never stated that the release of the autopsy report would result in an interference with the alleged criminal investigation, much less any details on how the release of Mr. Peters' autopsy to his children would interfere with the criminal investigation. (See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53). After the alleged criminal investigation concluded, still no autopsy report was provided detailing the cause of death. It remained concealed until a period just short of the expiration of the two-year statute of limitations for filing a Civil Rights action.(See, *Dkt. 54,*¶ 37-38, pages 14-15, 31-36, 38-39 and 51-53). As a matter of policy and practice of Galveston County, she is the policymaker for the medical examiner's office.

She adopted and promulgated the policy of withholding the autopsy reports of individuals that have died after entering the Galveston Jail or being released to the hospital from the jail contrary to the government code since there was no criminal investigation into Mr. Peter's death.(See, *Dkt. 54,* page 6, 7, 9-10, 14- 15, 31-36, 38-39 and 51-53). There was a claim that a criminal investigation had concluded, and even, then, she continued to withhold Mr. Peters' Autopsy report. [Dkt 54¶ 113]

The Peters family is not the only family that has had difficulty obtaining an autopsy after a death that occurred and after being taken into custody or after being released to the hospital. Jorge Cortez's family also had difficulty obtaining Galveston County medical records and autopsy reports. Kirk Swartz, who also died in the custody of Galveston County, also had difficulty obtaining Galveston County medical records and autopsy reports, only to find out later there was no autopsy performed, in violation of the *Texas Administrative Code*, Title 37, Part 9, Chapter 269, 269.1 Subchapter A. and of the Texas Government Code Sec. 501.055 and 511.021.

> (a) If an inmate dies while in the custody of the department, an employee of the facility who is in charge of the inmate shall immediately notify the nearest justice of the peace serving in the county in which the inmate died and the office of internal affairs for the department. The justice shall personally inspect the body and make an inquiry as to the cause of death. The justice shall make written copies of evidence taken during the inquest, and give one copy to the director and one copy to a district judge serving in the county in which the inmate died. The judge shall provide the copy to the grand jury and, if the judge determines the evidence indicates wrongdoing, instruct the grand jury to thoroughly investigate the cause of death.(b) Subsection (a) does not apply if the inmate:(1) dies of natural causes while attended by a physician or a registered nurse; or(2) is lawfully executed.(c) If an inmate dies as described by Subsection (b)(1), the **department or an**

**authorized official of the department shall immediately attempt to notify the next of kin of the inmate that the inmate has died, state the time of the inmate's death, and inform the next of kin that unless the next of kin objects to the department within eight hours of the stated time of death, an autopsy will be conducted on the inmate.(d) If the next of kin consents to the autopsy or does not within eight hours of the time of death file an objection with the department about the autopsy, the department or an authorized official of the department shall order an autopsy to be conducted on the inmat**e. The order of an autopsy under this subsection constitutes consent to an autopsy for the purposes of Article 49.32, Code of Criminal Procedure. See, Tex. Govt. Code 501.055

Dr. Barnhart engaged in a practice of employing other dilatory measures seeking an attorney general's opinion became a routine of her office, but not with all deaths, but the deaths involving jail inmates, and citing an ongoing investigation for each and every law enforcement custodial death without citing the nature of the investigation. [Dkt. 54¶116]. The harm suffered was the result of the Defendants' conduct motivated by evil intent and with callous deliberate indifference to the federally protected rights of Mr. Peters and his sons. The Defendants, including Barnhart, further engaged in efforts to impede discovering the constitutional violations of Galveston County by concealing and covering up the cause of death, withholding, and destruction of records.

Dr. Barnhart, Jack Roddy, Sheriff Trochesset, and Galveston County officials conspired to promote unconstitutional policies, caused the injury of Jaryd Peters, and deprived Mr. Peters of his constitutional right. [Dkt 54 ¶123]. The policy of Sheriff Trochesset, Dr. Barnhart, and Galveston County policies, caused the injury of Mr. Peters and deprived Mr. Peters of his constitutional right.● The Medical Examiner, acting in her official capacity, and individual capacity, Dr. Erin Barnhart, District attorney, and Sheriff

of Galveston agreed not to release the autopsy or videos in the jail to the family. ( Dkt.54, page 30 ¶ 110-117]

**D.** _**The Failure to Train and Supervise Claim is Raised Against Dr.  Barnhart**_

Plaintiffs have set forth a "short and plain statement of his complaint." See _Anderson v. Valdez,_ 845 F.3d 580, 589-90 (5th Cir. 2016). Plaintiffs also discussed those allegations in their response to the motion to dismiss. These allegations mandate that Barnhart's motion fails under the law. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "'itself is a repudiation of constitutional rights'" and is "'the moving force of the constitutional violation.'" _Thompkins v. Belt_, 828 F.2d 298, 304 (5th Cir. 1987) (citation omitted).  Here, Dr. Erin Barnhart did not overtly participate in causing the death of Mr. Peters. However, she  implemented a policy of refusing to produce the autopsy report of pre-trial detainees and incarcerated persons to families desiring to know the cause and manner of their loved ones' death until after the expiration of the statute of limitations for filing suit.

**E.** _**Plaintiffs also set forth facts to support a State Law claim for violation of the Texas Open Records Public Information Act against Dr. Barnhart.**_

In addition to facts pled to support the federal conspiracy claims to obstruct justice and deprive Plaintiffs of the public information they needed to bring a claim, Plaintiffs have also pled facts to support a claim that Dr. Barnhart violated the Texas Public Information Act.

Jaryd Peters was Jeffrey Peters' son. He requested his father's autopsy record from Barnhart under the open records act. Dr. Barnhart failed to turn over the records timely, within ten business days of the request, when there was no basis to withhold the records. She stated that the was a criminal investigation but she never demonstrated or much less even stated that allowing his son to have the records would interfere with the investigation. *(Dkt 5*4, page 7)

There are viable reasons to withhold open records, namely autopsies, but Dr. Barnhart never articulated any of the valid reasons. A medical examiner can withhold records if there is evidence that releasing the records to the requester would interfere with an ongoing investigation. No criminal charges, however, have ever been filed or charged against Officer McInnis or anyone due to the death of Mr. Peters. ( *Dkt 5*4, 7)

**F.      *Plaintiff is not seeking to recover from Barnhart for the death of Mr. Peters or claims under the Eighth Amendment.***

The defendants have a vigorous history of failing to release records to families who have had loved ones lose their lives while in jail custody, including autopsy records.

As mentioned above,  Jorge Cortez's family also had difficulty obtaining Galveston County medical records and autopsy reports.  Kirk Swartz, who also died in the custody of Galveston County, also had difficulty obtaining Galveston County medical records and autopsy reports, only to find out later there was no autopsy performed, in violation of the

*Texas Administrative Code*, Title 37, Part 9, Chapter 269, 269.1 Subchapter A. and of the Government Code Section 501.055 and 511.021.

## **PRAYER**

Plaintiffs respectfully request that this Court DENY the Motion to Dismiss the Second (Corrected) Amended Complaint filed by Dr. Erin Barnhart in its entirety, or alternatively, should the Court have any question whether to grant the Motion to Dismiss in whole or in part, Plaintiffs respectfully request the opportunity to obtain additional discovery, including but not limited to taking depositions, an opportunity to repled and for such further relief as the Court may deem just and proper in law or in equity.

Respectfully submitted,

The Lewis Law Group, PLLC

By: /s/ *U.A. Lewis*

U.A. Lewis
Federal Bar No. 1645666
SBN 24076511
P.O. Box 27353
Houston, TX 77227
(713) 570-6555
(713) 581-1087
myattorneyatlaw.com

Law Offices of Debra Jennings

*/s/Debra V. Jennings*

Debra V. Jennings
Federal Bar No. 14373
6140 HWY 6, #269
Missouri City, Texas 77459
(713) 514-3034
(1832) 442-3700
lawyerdvj@gmail.com

Attorneys for Peters, et.al.

## CERTIFICATE OF SERVICE

I certify that on the 4th day of May, 2022, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/*Debra V. Jennings*
Debra V. Jennings